256 N.J. Super. 404 (1992)
607 A.2d 186
MARY ROSE DIGIACOMO, PLAINTIFF-RESPONDENT,
v.
RICHARD DIGIACOMO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1992.
Decided May 19, 1992.
*406 Before Judges KING, DREIER and GRUCCIO.
Robert F. Binetti attorney for appellant (Robert F. Binetti, on the brief).
Susan Servis attorney for respondent (Susan Servis, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a final judgment of divorce entered March 25, 1991 after a hearing on November 27, 1990. He further appeals from the striking of his counterclaim and from the decision of the court to proceed in his absence when he allegedly became ill on the day the divorce was to be heard. The issue presented on this appeal is the effect of the filing of the petition of bankruptcy upon the final judgment of divorce.
The parties were married in 1979. They purchased a two-family home where they continued to live throughout the divorce proceedings. They jointly borrowed money to open a video store which the husband co-owned with a partner. The husband kept a job as a trucker until 1988, while the wife held a full-time clerk's position at a shipping company. She worked nights and weekends at the video store but she did not receive a salary. Eventually, the husband was bought out by his partner.
*407 The parties used the money from their share of the video business to open a tanning and toning salon, California Concepts. It was owned by the husband and a new partner, but the names of husband and wife were printed on the business card. Again, the wife worked evenings and weekends training employees and cleaning without receiving a salary, while maintaining her other full-time job as a clerk.
Plaintiff, Mary Rose DiGiacomo filed her complaint for divorce from Richard DiGiacomo on January 4, 1990. Defendant made no request for alimony, nor did she request child support for a child from a previous marriage. However she sought counsel fees for her attorney.
An order was entered on August 17, 1990 directing that defendant's answer and counterclaim would be stricken if interrogatories were not answered by September 15, 1990. On October 1, 1990 the judge entered an order suppressing the answer and dismissing the counterclaim for failure to serve answers to interrogatories. Defendant's motion to reinstate the answer and counterclaim was denied on October 26, 1990. There was, however, conflicting testimony at the trial of November 27, 1991 concerning whether the interrogatories had been timely served. Finding that defendant had "continuously avoided producing discovery in this matter," the trial judge denied defendant's request to have his answer reinstated at that time.
Before the November 27, 1990 trial, the judge and opposing counsel were told in chambers that the husband had filed a bankruptcy petition at 11:00 a.m. that morning in the United States Bankruptcy Court, although no copy of the petition was furnished by the husband's attorney. The husband had been previously requested by court order to produce a copy of the petition in the event that he filed for bankruptcy. He asserts that he made a request in chambers to have the trial stayed and that it was denied. Furthermore, the husband's request for an adjournment was denied. Counsel had requested the adjournment *408 because during lunch time the husband had gone home and had never returned.
The court heard testimony from the wife and allowed cross-examination by the husband's attorney. See Jugan v. Pollen, 253 N.J. Super. 123, 133, 601 A.2d 235 (App.Div. 1992). Judgment was reserved. The judge signed the final judgment of divorce and a qualified domestic relations order ("QDRO") on March 25, 1991. The final judgment of divorce gave the husband the family business and the wife the marital residence. The wife was responsible for paying the first mortgage on the marital residence and the husband was responsible for paying the second mortgage. (The second mortgage had secured the money borrowed for the first business, the video store). Further, the QDRO provided that 50% of husband's pension was to be paid to the wife. The court awarded $7,500 to the wife's attorney for counsel fees.
Subsequently, on or about April 4, 1991, an order of discharge relieving husband from his indebtedness was entered by Hon. William Tuohey in the United States Bankruptcy Court. While the parties have not provided this court with a copy of that order, we have independently verified this fact.
As a result of the filing of the petition, certain acts and proceedings against the husband and his property were automatically stayed. 11 U.S.C.A. § 362(a) (1979). The automatic stay provision prohibits:
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.
* * * * * * * *
(3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate.
11 U.S.C.A. § 362(a)(1), (a)(3) (1979).
In matrimonial matters, however, the automatic stay provision does not apply to actions to "collect[] alimony, maintenance *409 or support from property that is not property of the estate." 11 U.S.C.A. § 362(b)(2) (1979); Stein v. Fellerman, 144 N.J. Super. 444, 449, 365 A.2d 1382 (App.Div. 1976), certif. denied, 73 N.J. 50, 372 A.2d 315 (1977); Lee v. Lee, 180 N.J. Super. 90, 93, 433 A.2d 824 (Ch.Div. 1981).
In In re Rook, 102 B.R. 490, 492 (Bankr.E.D.Va. 1989), the bankruptcy court stated:
In the realm of domestic relations litigation, matters which do not bear on a debtor's economic status, such as the dissolution of the marital relationship, are not stayed by a bankruptcy court. In re Schock, 37 B.R. 399, 400 (Bankr. D.N.D. 1984) (determining that divorce petitions are not stayed by § 362 of the Code); see also In re General Oil Distributors, Inc., 33 B.R. 717, 718 (Bankr.E.D.N.Y. 1983) (reviewing legislative history of § 362 indicating that divorce or child custody proceedings involving debtor may bear no relation to bankruptcy case.)
102 B.R. at 492. Therefore, that part of the final judgment which grants Mrs. DiGiacomo a divorce, and which grants her request to use her maiden name, Eichler, can and will be affirmed by this court. However, since Mrs. DiGiacomo specifically did not request alimony or support, but rather limited her request to equitable distribution, all property that does not fall into the category excluded under the § 362(b)(2) exception for "maintenance" was properly subject to the jurisdiction of the United States Bankruptcy Court.
Under the facts of this case, the trial judge's award of attorney's fees may or may not be affected by the discharge in bankruptcy. Under New Jersey law, the attorney's fees of the dependent party's attorney are usually not dischargeable in bankruptcy because they are considered to be in the nature of support. In Pelusio v. Pelusio, 130 N.J. Super. 538, 328 A.2d 10 (App.Div. 1974) we held:
In our view, the counsel fees and costs awarded to the plaintiff wife upon the entry of the final judgment of divorce are as much `necessaries' as are alimony, maintenance and support and, as such, fall within that class of indebtedness excepted from release by a discharge in bankruptcy.
Id. at 539, 328 A.2d 10, citing 11 U.S.C.A. § 35(a)(7); Turman v. Turman, 438 P.2d 488 (Okl.Sup.Ct. 1968); Allison v. Allison, *410 150 Colo. 377, 372 P.2d 946 (1962). See R. 4:42-9; Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971).
But, whether the trial court's award of attorney's fees to the wife is dischargeable in bankruptcy depends upon whether the trial court intended the obligation to serve a support function. In re Brenegan, 123 B.R. 12, 13 (Bankr.D.Del. 1990); In re Tosti, 62 B.R. 131, 132 (Bankr.D.N.J. 1986); In re Jackson, 58 B.R. 72, 74 (W.D.Ken. 1986). Attorney's fees serve as a support payment to a spouse in a divorce action if the purpose of the award is "to equalize the positions of the parties ... and to provide the needier individual with the financial means of prosecuting or defending a court action." In re Brenegan, supra, 123 B.R. 12, 13. In Brenegan, the Family Court judge contrasted the resources of the parties, finding a significant disparity between the present income of the debtor and his wife. In noting that Mrs. Brenegan "did not work outside the home during marriage [which precluded] her from accumulating exclusive and substantial resources," id. at 14, the court held the fees to be nondischargeable because she would have been unable to prosecute her divorce otherwise.
We have reviewed the record here to determine whether the trial court intended its award of attorney's fees to Mrs. DiGiacomo to be in the nature of spousal support rather than a part of the division of marital property. The wife did not ask for child support or alimony. However, that fact is not determinative of whether the attorney fees are dischargeable in bankruptcy. Our courts make no distinction between attorney fees which are awarded based upon an action for equitable distribution alone or upon alimony and support. See R. 4:42-9(a)(1); R. 5:1-2, comment 6. The only apparent restriction is that no allowance shall be made for nonmatrimonial issues merely because they are joined with matrimonial issues. Anzalone v. Anzalone, Bros., Inc., 185 N.J. Super. 481, 487-488, 449 A.2d 1310 (App.Div. 1982). The testimony revealed that Mrs. DiGiacomo had instituted the action in good faith. Because of her husband's continuous failure to comply with court orders, she *411 continued to incur substantial legal fees. Mrs. DiGiacomo earned only $305 per week at another full-time clerk's position while, as noted earlier, she continued to work without a salary to build up her husband's business enterprises. These facts could have led the trial judge and certainly causes us to determine that Mrs. DiGiacomo was at a decided disadvantage in her ability to pay for her own fees. The recalcitrance of Mr. DiGiacomo, evidenced by his disobeying court orders regarding discovery and otherwise impeding the case's progress, forced Mrs. DiGiacomo to incur additional attorney services and the resultant fees.
The award of attorney fees is discretionary with the trial judge. Throughout the pretrial stage the judge was fully familiar with the work performed by the attorney seeking the award and the necessity thereof. While Mrs. DiGiacomo's share of the equitable distribution was designed to compensate her for the efforts which she put into her husband's business ventures, the counsel fee award clearly had a different basis. It was a "necessary," vital to her support through this arduous litigation. Thus, the fee awarded by the trial judge is a nondischargeable debt of the payor spouse, Mr. DiGiacomo, under New Jersey law. Such award also does no violence to federal bankruptcy principles. In re Tosti, supra, 62 B.R. at 132.[1]
The marital home and the California Concepts business stand on a different footing. Once defendant's petition in bankruptcy was filed, that property became subject to the jurisdiction of the bankruptcy court. See 11 U.S.C. § 362(a). "Property of a marriage, formerly under the jurisdiction of the dissolution court, becomes property of the estate under the exclusive jurisdiction of the Bankruptcy Court." American *412 Bankruptcy Institute, Bankruptcy Issues for State Court Judges 63 (1991-1992).[2] "Generally, however, the stay does not bar most actions in a divorce proceeding, however, it will bar disposition of estate property by the nonbankruptcy court." Id. at 47. Therefore, the business and the marital home were properly subject to the jurisdiction of the Bankruptcy Court, and to the extent that the final judgment of divorce addresses the disposition of those assets, that part of the order must be vacated.
Finally, we treat the issue of whether the pension is property of the estate or whether it is maintenance which is nondischargeable. The pension distribution in the final judgment for divorce was embodied in the QDRO, issued on the same day as the divorce judgment. Kruger v. Kruger, 73 N.J. 464, 471, 375 A.2d 659 (1977) held that pensions are property subject to equitable distribution. See also Kikkert v. Kikkert, 177 N.J. Super. 471, 427 A.2d 76 (App.Div. 1981), aff'd o.b., 88 N.J. 4, 438 A.2d 317 (1981). However, there is an exception to treating pension benefits embodied in a QDRO as a dischargeable property debt. 29 U.S.C.A. § 1056(d)(3)(1979). In re Eichelberger, 100 B.R. 861 (Bankr.S.C.Tex. 1989) held that required payments under a QDRO escape discharge in bankruptcy. Id. at 866; see also Bush v. Taylor, 912 F.2d 989, 994 (8th Cir.1990) (holding that obligation to pay pension benefits gave rise to a constructive trust relationship and obligation was not discharged in bankruptcy); cf. Justus v. Justus, 581 N.E.2d 1265, 1270-1271 (Ind. Ct. App. 1991) (discussing the definition of dischargeable debt in bankruptcy in the context of an antenuptial agreement). The policy behind excluding pension benefit debts from discharge appears in Bush v. Taylor, supra, as follows: "Congress enacted this 1984 [ERISA] exception to ... *413 `guarantee that the nation's private retirement-income system provided fair treatment for women.'" Id. at 994-995, quoting Mackey v. Lanier Collections Agency & Serv., 486 U.S. 825, 838, 108 S.Ct. 2182, 2190, 100 L.Ed.2d 836 (1988). Therefore, we find that the pension QDRO is not a dischargeable obligation under federal law, and that the order giving Mrs. DiGiacomo 50% of her husband's pension in the form of a QDRO is fully enforceable.[3]
In sum, we affirm the final judgment of divorce of March 25, 1991, with the exception of those parts of the order relating to the distribution of (1) the marital home and (2) the business, California Concepts, because those property assets were properly under the jurisdiction of United States Bankruptcy Court pursuant to the automatic stay provision of 11 U.S.C.A. § 362 (1979). Further, we affirm the Qualified Domestic Relations order of March 25, 1991 providing for payment of pension benefits to Mary Rose DiGiacomo and the order directing payment of the attorney's fees to the wife.
NOTES
[1] If, however, the issue is later presented to a bankruptcy court, we acknowledge that a contrary decision concerning the dischargeability of the obligation to pay the attorney's fees will supersede any determination we make here. Cf. Uslar v. Uslar, 253 N.J. Super. 289, 292-293, 601 A.2d 761 (App.Div. 1992).
[2] The American Bankruptcy Institute, the publisher of these seminar materials represents itself as "a multi-disciplinary nonpartisan organization devoted to the advancement of jurisprudence related to the problems of insolvency." The study was developed through a grant of the State Justice Institute.
[3] We noted in footnote 1 and reiterate here that any subsequent timely application to a bankruptcy court can result in an order superseding our determination.