719 A.2d 678 (1998)
316 N.J. Super. 52
Roberta WINEGARDEN, Plaintiff-Respondent,
v.
Robert WINEGARDEN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1998.
Decided November 6, 1998.
*679 Jacqueline R. Rocci, E. Brunswick, for defendant-appellant.
Caryl W. Leightman, Millburn, for plaintiff-respondent.
Before Judges STERN, LANDAU and BRAITHWAITE.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
This is an appeal by defendant former husband, Robert Winegarden, from that part of a post-judgment order requiring him to resume alimony payments to plaintiff in the amount of $750 per month and determining that defendant's obligation to indemnify and hold plaintiff harmless for marital debts and to pay her counsel fees of $7,500, in accordance with the judgment of divorce, were "in the nature of alimony, maintenance or support" and therefore not dischargeable in bankruptcy. 11 U.S.C.A. § 523(a)(5)(B).
The parties' settlement agreement, incorporated into the judgment of divorce, provides that defendant would pay $7,500 for plaintiff's counsel fees and assume all marital debt, including credit card debt, of "approximately $100,000." The agreement further provides a hold harmless clause where defendant agreed to "indemnify and hold plaintiff harmless, including [future] counsel fees, in the event plaintiff is called upon to pay any of the aforesaid debts." An "essential" component of the agreement was defendant's representation that he intended to file for personal bankruptcy to discharge the debts as to himself. Defendant acknowledged, at the time of divorce, that although some of the debts were incurred in plaintiff's name, all the debts were for the benefit of defendant.
As contemplated, defendant filed for personal bankruptcy under Chapter 7 of the United States Bankruptcy Code. He listed plaintiff as a creditor claiming a debt of $1.00. The bankruptcy petition requires the debtor to explain the "nature" and purpose for which the debt was incurred. Defendant did not explain the nature or purpose of this debt and left that portion of the petition blank. He also listed the fees owed to plaintiff's prior counsel. There, defendant identified the creditor as a law firm, with the use of the abbreviation "Esqs." Defendant described the purpose of the debt with the word "service." Neither plaintiff nor her prior counsel responded to defendant's bankruptcy petition, and he received a discharge from all "dischargeable debts" on July 5, 1996.
Thereafter, plaintiff was sued by one of the creditors that defendant assumed responsibility *680 for paying and to which the hold harmless agreement applied. The creditor obtained a judgment against plaintiff and received a wage execution to satisfy its judgment. Subsequently, plaintiff moved to enforce her rights under the judgment of divorce seeking, among other things, to enforce the hold harmless agreement, the payment of her alimony of $750 per month,[1] and the payment of her prior counsel's fees of $7,500. Defendant cross-moved seeking a ruling that the hold harmless agreement and counsel fees had been discharged in bankruptcy, relying on 11 U.S.C.A. § 523(a)(15) ("Section 15").
Following oral argument the motion judge determined that the hold harmless agreement and counsel fees were not dischargeable pursuant to 11 U.S.C.A. § 523(a)(5)(B) ("Section 5"). Thus, the issue we need to address is the dischargeability of the hold harmless agreement and counsel fees. Our review of the record convinces us that the motion judge correctly determined that the counsel fees and hold harmless agreement were "in the nature of alimony, maintenance or support and therefore not dischargeable."[2]Ibid. Accordingly, we affirm.

I
The parties were married for twenty-three years before the court entered the judgment of divorce on September 27, 1995. They had one son, Alan, who was fifteen years old when the judgment was entered. At that time, defendant, a self employed dentist, earned approximately $84,000 per year and plaintiff, a part-time teacher earned $29,000 per year. The relevant portions of the settlement agreement provide as follows: (1) defendant would pay $1,500 per month in child support and $750 per month in alimony; (2) alimony terminated on plaintiff's death or remarriage, with defendant having the right to move to reduce alimony if plaintiff cohabitated with another man; (3) defendant received title to the marital home subject to two existing mortgages having a combined payment of $2,600 per month; (4) defendant retained sole possession of his dental practice; (5) defendant assumed responsibility for all debts incurred during the marriage and would hold plaintiff harmless, including attorney's fees, for all of the debts; and (6) defendant would pay plaintiff's counsel fees of $7,500.
As noted, supra, the assumption of debt by defendant was in contemplation of his filing for personal bankruptcy. The hold harmless clause was to insure that the debts would not revisit plaintiff, following defendant's bankruptcy. Further, defendant acknowledged that the debts were incurred by him and for his personal benefit. Plaintiff testified as part of her uncontested grounds for divorce that "defendant incurred nearly $100,000 in debt without her knowledge."

II
The Bankruptcy Code provides exceptions to a Chapter 7 discharge making certain debts not dischargeable. Here, the two relevant exceptions under 11 U.S.C.A. § 523(a) are Sections 5 and 15 which provide:
(a) A discharge under section 727[3]... of this title does not discharge an individual debtor from any debt
. . .
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or *681 child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

[(emphasis added) ].
...
(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.
Section 5 "prohibits the discharge of a debtor's alimony, maintenance or support obligations to his or her former spouse and children." Loyko v. Loyko, 200 N.J.Super. 152, 155, 490 A.2d 802 (App.Div.1985). Section 15, however, prohibits the discharge of non-support obligations if the debtor has "the ability to pay them and the detriment to the non-debtor spouse from their non-payment outweighs the benefit to the debtor of discharging such debts." In re Hesson, 190 B.R. 229, 234 (Bankr.D.Md.1995) (citation to Congressional record omitted). It "adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support." Id. at 233.
Prior to the enactment of Section 15, "marital obligations had been governed exclusively by [Section 5]," which "required bankruptcy courts to divide family law monetary obligations into two partsnon-dischargeable payments of alimony, maintenance or support and dischargeable property settlement obligations." Ibid. The resultant discharge of the marital debts determined to be property settlement obligations often proved to be unfair, particularly to the non-debtor spouse. Ibid.
Although Section 5 and 15 both seek to protect from discharge obligations made to former spouses under divorce agreements, there are significant differences in jurisdiction and procedure. With respect to Section 5, bankruptcy and state courts have concurrent jurisdiction to determine the dischargeability of debts. Loyko, 200 N.J.Super. at 156, 490 A.2d 802 (citing In re Romeo, 16 B.R. 531, 533 (Bankr.D.N.J.1981)). Additionally, the Bankruptcy Code does not require Section 5 creditors to file a proof of claim in order to maintain nondischargeability. 11 U.S.C.A. § 523(c)(1). By definition, these debts are fully exempt from discharge.
Conversely, a Section 15 debt will be discharged unless the creditor files a proof of claim and the bankruptcy court concludes that the obligation is nondischargeable. Ibid. As a result, the only court having jurisdiction to entertain a Section 15 inquiry is the federal bankruptcy court. Thus, if the obligations here were Section 5 debts, the Family Part had jurisdiction *682 to determine that they were not discharged in bankruptcy. Accordingly, defendant's challenge fails if that determination was correct.

III
As noted, supra, a debt is not dischargeable if it is in the nature of support. 11 U.S.C.A. § 523(a)(5)(B). "What constitutes alimony, maintenance or support, however, is determined under federal bankruptcy law." Loyko, supra, 200 N.J.Super. at 156, 490 A.2d 802. Here, we must determine whether the hold harmless clause and defendant's obligation to pay plaintiff's counsel fees were in the nature of support.
"[W]hether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement." In re Gianakas, 917 F.2d 759, 762 (3rd Cir.1990). The labels attached to an agreement by the parties are not controlling. "[T]he court must look beyond the label attached... to examine its true nature." Ibid. There are three principal factors to be examined to determine the parties intent. Ibid. They are: (1) "the language and substance of the agreement in the context of surrounding circumstances;" (2) "the parties' financial circumstances at the time of the settlement;" and (3) "the function served by the obligation at the time of the divorce or settlement." Id. at 762-63.
Applying these three factors to the hold harmless clause, we are satisfied that the parties intended this provision to be in the nature of support. Defendant assumed full responsibility for the debts and in the event creditors sought repayment from plaintiff he promised he would indemnify her, including the payment of any counsel fees she might incur. The parties agreed that plaintiff and their son would continue to reside in the marital home and in that regard, plaintiff received the home in equitable distribution. Moreover, plaintiff accepted "a small amount of alimony" in part because defendant assumed responsibility for the debts.
In receiving the marital home, however, plaintiff assumed the payment of two mortgages on the premises that totaled $2,600 per month. The child support and alimony that defendant was obligated to pay, $2,250 per month, was less than the monthly mortgage payments on the home. At the time, plaintiff had yearly earnings of $29,000. Without the assumption of debts by defendant and the hold harmless clause, plaintiff would not have been able to carry out the parties' intent that she and the son reside in the marital home. The payment of the mortgages was simply one component of the obligation of supporting herself and their son. Plaintiff also had to provide food, transportation, utilities and the like.
At the time of divorce, defendant earned approximately $84,000 per year, compared to $29,000 for plaintiff. An imbalance in the parties' relative income is a factor tending to indicate the parties intend the payment of certain marital obligations to be in the nature of support. Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir.1984). This appears to be particularly so when the direct support paid by the debtor spouse, with the superior income, is less than the amount needed to provide for one of the major components of support, such as housing. Considering the facts and circumstances, and applying the factors set forth in Gianakas, we are satisfied that the motion judge concluded correctly that the hold harmless agreement was in the nature of support and therefore not dischargeable.
Defendant argues that the motion judge lacked jurisdiction to decide the issue because it should have been analyzed under Section 15. He asserts that plaintiff received notice of the bankruptcy and failed to file a claim to have the issue resolved in the bankruptcy court. We reject this position as being without merit. R. 2:11-3(e)(1)(E). The obligation was in the nature of support and therefore nondischargeable under Section 5. Under this section, the Family Part judge had concurrent jurisdiction.

IV
Finally, defendant argues that his obligation to pay plaintiff's counsel fees was discharged. He applies the same reasoning that notice was given to plaintiff's former *683 counsel and that the appropriate analysis is pursuant to Section 15. We apply the same analysis here as we applied to the hold harmless clause and therefore reject defendant's position. The counsel fees are in the nature of support and were properly analyzed under Section 5.
[W]hether the trial court's award of attorney's fees to the wife is dischargeable in bankruptcy depends upon whether the trial court intended the obligation to serve a support function. Attorney's fees serve as a support payment to a spouse in a divorce action if the purpose of the award is "to equalize the positions of the parties ... and to provide the needier individual with the financial means of prosecuting or defending a court action."
[DiGiacomo v. DiGiacomo, 256 N.J.Super. 404, 410, 607 A.2d 186 (App.Div.1992) (citations omitted).]
Here, there was a significant disparity between the income of defendant and plaintiff at the time of the divorce. We are satisfied that plaintiff would have been unable to prosecute her divorce without assistance from defendant in the form of payment of her counsel fees. Ibid.
Affirmed.
NOTES
[1] The record indicates the parties, without the assistance of counsel, agreed to terminate alimony at some time in September, 1996. This decision was based on plaintiff's cohabitation and certain agreements relating to unpaid State taxes for which the State seized monies from plaintiff. The trial court found that the circumstances surrounding this agreement rendered it void as a product of duress and ordered defendant to resume making payments. The judge scheduled a plenary hearing on defendant's request to terminate alimony based on plaintiff's cohabitation. A hearing was subsequently held and defendant was relieved of his alimony obligation. Both parties agree that the subsequent order terminating plaintiff's alimony renders moot the alimony issue initially raised in this appeal.
[2] Hereinafter, "in the nature of support" will mean "in the nature of alimony, maintenance or support."
[3] This section authorizes a discharge under Chapter 7 of the Bankruptcy Code.