**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3461-18T3

GRZEGORZ WAJDA,

    Plaintiff-Appellant,

v.

SYLWIA WAJDA,

    Defendant-Respondent.

_____

Submitted March 2, 2020 – Decided April 23, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2488-17.

Shane & White, LLC, attorneys for appellant (Kenneth A. White and Lauren Ann Miceli, of counsel and on the briefs).

Jeffrey Marc Bloom, attorney for respondent.

PER CURIAM

Plaintiff Grzegorz Wajda and defendant Sylwia Wajda divorced in February 2018. The final judgment of divorce incorporated a Marital Settlement Agreement (MSA) obligating plaintiff to 1) pay limited duration alimony of $425 per week for twelve years; and 2) maintain a life insurance policy for the benefit of defendant and the parties' child "for the duration of the alimony obligation[,]" after which plaintiff could "remove" defendant as a beneficiary of the policy and reduce the amount. Plaintiff's alimony obligations would terminate in the event of defendant's "remarriage or cohabitation" with another person.

In December 2018, plaintiff moved to terminate alimony, alleging defendant had been cohabiting with a named individual, A.S., since October.[1] Alternatively, plaintiff sought discovery if defendant denied the allegation. Plaintiff also sought counsel fees and did not request oral argument unless the motion was opposed.

In support of the motion, plaintiff supplied a 148-page report from a private investigator, largely comprised of photographs taken from a mounted camera near defendant's home. Succinctly stated, that report demonstrated A.S.

---

[1] Although not technically within the exceptions provided by Rule 1:38-3(d), we use initials to maintain the confidentiality of defendant's alleged paramour.

A-3461-18T3

stayed overnight at defendant's home nearly every night from October 5 through December 12, 2018. The report also indicated that A.S. remained in the home when defendant was not present and when the parties' daughter was there, kept his car there, often drove defendant's car, did some household chores, and kept his two dogs there.

Defendant opposed the motion, sought counsel fees, and requested oral argument. She certified that she met A.S. in May and began a dating relationship with him in July 2018. Defendant admitted that the "observations" about A.S. contained in the report were true. However, she stated that A.S. was her "boyfriend" and the two were not cohabitating. Defendant supplied copies of A.S.'s vehicle credentials, which showed a New York address, as well as monthly bills and bank account information with that address. Defendant certified further that A.S. had recently been ill, was undergoing treatment in New Jersey hospitals, and slept in defendant's home as a result.

Plaintiff's reply certification disputed the import of the documents A.S. supplied. For example, he noted that A.S.'s bank statement demonstrated transactions and purchases made in the town where defendant lived.

Exactly what occurred procedurally thereafter is unclear. The appellate record contains a letter to the judge from defense counsel asking for a two-week

3

adjournment from the scheduled January 25, 2019 hearing date with his adversary's consent. Without any explanation that is apparent from the record, both counsel sent letters to the judge on February 13 confirming that chambers informed them there would be no oral argument as scheduled on February 15. Plaintiff's counsel's letter indicated he would "await receipt of an [o]rder . . . or further instruction if oral argument is to be scheduled on a subsequent date." Defense counsel's letter was more direct, stating, "[t]he court will notify of an oral argument date."

When no order was entered on February 15, plaintiff's counsel sent another letter to the judge on February 22, noting the court had not "address[ed] [p]laintiff's motion and did not hold oral argument." Counsel noted his office contacted chambers and was informed that the motion had not been decided and might not be decided in the near future. Counsel asked for an expeditious review of the motion, given the financial consequences to his client. Defense counsel responded with a letter to the judge on February 25, stating: "I am unsure as to whether the court advised [plaintiff's counsel] that oral argument was not going to be conducted, as I was under the impression that same was to be scheduled." On March 20, plaintiff's counsel sent a letter to the judge confirming an earlier

conversation with chambers that the motion was calendared for March 22 and would be decided on the papers and without argument.

Nonetheless, on March 20, the judge entered an order denying plaintiff's motion and holding each party responsible for his or her own counsel fees. In an accompanying written statement of reasons, the judge said, "[p]laintiff's attorney waived oral argument when contacted by chambers and defendant's counsel did not object." The judge noted both parties acknowledged in the MSA that N.J.S.A. 2A:34-23 applied, and, "[a]ssuming, for argument's sake, that the statute does not apply," the judge was guided by the Court's decision in Konzelman v. Konzelman, 158 N.J. 185 (1999). Finding the analyses under the statute and Konzelman were "not dissimilar[,]" and assuming everything in the investigative report was true, the judge concluded plaintiff failed to make a prima facie case that defendant was cohabitating with A.S. This appeal followed.

Plaintiff argues that the judge's factual findings were not supported by substantial, credible evidence, and therefore are not entitled to any deference. He contends that the judge failed to enforce the MSA, because plaintiff proved defendant was cohabitating with A.S., or, alternatively, he demonstrated a prima facie case warranting a plenary hearing on the issue. Plaintiff urges that any

remand be conducted by a different judge. Defendant argues otherwise, urging us to affirm because plaintiff failed to make a prima facie showing of cohabitation. Having considered these arguments and applying governing legal principles, we reverse and remand for further proceedings.

We generally defer to factual findings made by a trial court when such findings are supported by adequate, substantial, and credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "A more exacting standard governs our review of the trial court's legal conclusions[,] . . . [which] we review . . . de novo." Id. at 283 (citing D.W. v. R.W., 212 N.J. 232, 245–46 (2012)).

We review the court's decision regarding the need for a plenary hearing for an abuse of discretion. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

N.J.S.A. 2A:34-23(b) includes a non-exhaustive list of factors the court should consider in setting an award of alimony, although the parties are free to "enter into voluntary agreements governing the amount, terms, and duration of alimony, . . . subject to judicial supervision and enforcement." Quinn v. Quinn, 225 N.J. 34, 48 (2016) (citing Konzelman, 158 N.J. at 203). "[W]hen the parties have outlined the circumstances that will terminate the alimony obligation," our courts "will enforce voluntary agreements to terminate alimony upon cohabitation, even if cohabitation does not result in any changed financial circumstances." Id. at 50 (citing Konzelman, 158 N.J. at 197).

In 2014, "the Legislature adopted amendments to N.J.S.A. 2A:34-23, designed to more clearly quantify considerations examined when faced with a request to establish or modify alimony . . . includ[ing] provisions regarding modification of alimony and the effect of a dependent spouse's cohabitation[.]" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536–37 (App. Div. 2015). Specifically, N.J.S.A. 2A:34-23(n) states that alimony may be "terminated" if the dependent spouse "cohabits with another person."

> Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.

When assessing whether cohabitation is occurring, the court shall consider the following:

(1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;

(2) Sharing or joint responsibility for living expenses;

(3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and

(7) All other relevant evidence.

It is customary for factual disputes relating to alleged cohabitation to be resolved at a plenary hearing, at which the trial judge can evaluate the credibility of competing witnesses. See, e.g., Winegarden v. Winegarden, 316 N.J. Super. 52, 56 n.1 (App. Div. 1998). Conducting such a plenary hearing in cohabitation disputes is consistent with the general principle in post-judgment matrimonial cases that "[d]isputes of material fact should not be resolved on the basis of

[written] certifications[.]" <u>Palmieri v. Palmieri</u>, 388 N.J. Super. 562, 564 (App. Div. 2006).

As noted, the judge did not provide the parties with oral argument. Whether argument was waived, as the judge said in his opinion, or whether it never took place in the confusion of postponements, as the correspondence demonstrates and plaintiff's counsel claims, it is clear that the judge considered the statutory factors. He concluded that plaintiff failed to show that defendant and A.S. had intertwined finances or shared living expenses, or their relationship was recognized by their social or family circles, or A.S. actually resided with defendant or did any appreciable amount of chores around the house.

Here, of course, there were no factual disputes about the contents of plaintiff's investigative report. Defendant provided various documents purporting to show that A.S. lived in New York. The judge assumed arguendo everything in the investigative report was true, and, for our purposes, seemingly did not attach significance to defendant's proffers. Nonetheless, we part ways with the judge's weighing of the statutory factors and certainly the legal conclusions he drew from the undisputed facts.

There is a certain tension in the statue since it explicitly provides that cohabitation "does not necessarily" require that the parties "maintain a single

common household." N.J.S.A. 2A:34-23(n). In Konzelman, however, the Court stated that cohabitation required "more than a common residence, although that is an important factor." 158 N.J. at 202 (emphasis added). We recognize the difficulties of developing proofs of things such as intertwined finances, joint bank accounts, shared living expenses and household chores, and recognition of the relationship in the couple's social and family circle, without either invading a former spouse's privacy or taking some discovery on the issue.

In this case, it was undisputed that A.S. stayed overnight in defendant's home nearly every night for almost two months. He kept his dogs there, as well as his car. The bank records defendant furnished demonstrated that A.S. was purchasing items and transacting bank business in the same town where defendant resided. A.S. remained in the home even when defendant left. The judge found that A.S. did not reside with defendant, but he did not find that A.S. resided elsewhere. The investigative report also demonstrated that A.S. and defendant shared some social media connections. Certainly, without any discovery, plaintiff could not demonstrate that defendant and A.S. shared expenses or intertwined their finances.

We disagree with plaintiff's assertion that he demonstrated cohabitation — that defendant and A.S. were in "a mutually supportive, intimate personal

relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage[,]" N.J.S.A. 2A:34-23(n) — based solely on the documents filed by both sides. The question is whether plaintiff made a sufficient showing to warrant further discovery. We think he did.

We, therefore, remand the matter to the Family Part for further proceedings. Recognizing in the first instance that plaintiff is entitled to some discovery, we leave the scope of the discovery to the sound discretion of the remand judge, and do not necessarily require at this point that he or she order a plenary hearing. Plaintiff or defendant are certainly free to make such a request after discovery is completed. Additionally, "[i]n an abundance of caution, we direct that this matter be remanded to a different judge . . . to avoid the appearance of bias or prejudice based upon the judge's prior involvement[.]" Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION