**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3565-21

ELIZABETH BOLLINGER,

     Plaintiff-Respondent,

v.

JEFFREY ENGELSMAN,

     Defendant-Appellant.

_____

Argued October 17, 2023 – Decided December 26, 2023

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County Docket No. FM-18-0322-15.

Paul Joseph Concannon argued the cause for appellant (Dario, Albert, Metz, Eyerman, Canda, Concannon, Ortiz and Krouse, attorneys; Paul Joseph Concannon, on the briefs).

Eric Solotoff argued the cause for respondent (Fox Rothschild LLP, attorneys; Eric Solotoff, on the brief; Jessica Diamond Lia, on the brief; Eliana T. Baer, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Jeffrey Engelsman appeals from certain provisions of a June 6, 2022 order denying: modification of his alimony obligation; his request for plaintiff Elizabeth Bollinger to pay housing related child support expenses; his claim that plaintiff violated his litigant's rights; and his request that plaintiff pay his counsel fees and costs. We affirm substantially for the reasons stated in Judge Haekyoung Suh's comprehensive and well-reasoned opinion.

I.

We glean the pertinent facts and procedural history from the motion record. The parties were married and have two adult daughters. Following a contested hearing, the trial court entered a final judgment of divorce (JOD) in December 2018. An amended JOD (AJOD) was entered on February 26, 2019.[1]

The AJOD provided defendant was to pay plaintiff alimony. Defendant's alimony and child support obligations were based on his income of "$790,000 per year," which was "roughly . . . the [d]efendant's historical gross earned income . . . over the prior five years." Plaintiff's contribution to child support

---

[1] The JOD was amended for reasons unrelated to this appeal.

A-3565-21

was calculated on an imputed income of $35,000.

Defendant was employed at The TCW Group, Inc. (TCW) as Chief Compliance Officer (CCO) from August 2014 until his termination in December 2020. His termination agreement stipulated TCW would provide a lump sum severance payment of $1,000,000 in January 2021 and direct payment for his continued COBRA premiums, approximately $1,000 a month. Further, upon defendant's termination, TCW invoked its right to repurchase his TCW stock, valued at $1,997,949. TCW was to pay defendant the full value of the stock over the course of five years in equal installments. Following his termination, defendant unsuccessfully searched for alternative full-time employment. However, he was able to find part-time work as a consultant where he earned over $200,000. He also collected unemployment benefits.

Under the AJOD, the parties agreed "to divide child support expenses [seventy percent] to [d]efendant and [thirty percent] to [p]laintiff." The parties' oldest daughter, now age twenty-five and emancipated in May 2019, had resided with plaintiff and graduated from the University of Maryland. The parties' youngest daughter, now age twenty-two, resided with defendant when she was not attending the University of Southern California and has since graduated from the university.

3

On April 15, 2022, defendant filed a motion requesting the trial court: reduce his alimony obligation due to a substantial change in his financial circumstances; schedule a plenary hearing to address his financial issues; find plaintiff violated the AJOD by failing to satisfy her child support obligations; order her to reimburse him; and award him counsel fees. Plaintiff filed a cross-motion requesting the trial court: deny defendant's motion in its entirety; declare the parties' youngest daughter emancipated; and award her counsel fees. On May 13, 2022, the judge issued a preliminary order and decision. Plaintiff accepted the trial court's preliminary order, but defendant did not. Accordingly, the judge held argument on June 3, 2022.

On June 6, 2022, Judge Suh issued an order with an accompanying thirty-two-page written opinion. She denied all of defendant's requested relief except an award of additional child support.[2]

## II.

On appeal, defendant contends that the judge: (1) "erred in determining, without discovery or a plenary hearing, that [he] did not experience a substantial

---

[2] The judge granted that part of plaintiff's cross-motion that sought the youngest daughter's emancipation, and the child was emancipated as of May 13, 2022. Defendant did not oppose that part of plaintiff's cross-motion and that issue is not on appeal.

change in his financial condition to warrant review or modification of his alimony obligation"; (2) "erred in holding [him] to a higher standard of proof than a prima facie showing of a substantial change in his financial condition in denying his application for review and modification of his alimony obligation"; (3) "erred in [her] assessment of factors under N.J.S.A. 2A:34-23(k), in denying [his] application for review and modification of his alimony obligation"; (4) abused her discretion "by including the principal and gain payments from the forced repurchase of the TCW stock assets as income to [him] for [the purpose of paying] alimony"; (5) "erred in determining, without discovery or a plenary hearing, that the 'child support expenses' that the parties agreed to share on a [seventy/thirty] basis under their [JOD] d[id] not include fixed costs (i.e. housing related expenses) incurred on behalf of the child"; (6) "erred in denying [his] application to hold plaintiff in violation of litigant's rights for her failure to contribute towards, and reimburse defendant for, her share of the 'child support expenses' pursuant to their [JOD]"; and (7) erred in "denying [his] application for counsel fees and costs."  We disagree.

Our review of a Family Part order is limited.  See Cesare v. Cesare, 154 N.J. 394, 411 (1998).  "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters."

Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere . . . ." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007))). An appellate court "will reverse only if [it] find[s] the trial judge clearly abused his or her discretion, such as when the stated 'findings were mistaken[,] . . . the determination could not reasonably have been reached on credible sufficient evidence present in the record[,]' or the judge 'failed to consider all of the controlling legal principles[.]'" Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

It is well established that matrimonial settlement agreements are "'entitled to considerable weight with respect to their validity and enforceability' . . . provided they are fair and just" because they are "essentially consensual and voluntary in character . . . ." Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). However, courts

retain the equitable power to modify support provisions at any time. <u>Lepis v. Lepis</u>, 83 N.J. 139, 145 (1980) (citing N.J.S.A. 2A:34-23).

"Whether [a support] obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." <u>Larbig v. Larbig</u>, 384 N.J. Super. 17, 21 (App. Div. 2006) (citations omitted); <u>see also</u> <u>Storey v. Storey</u>, 373 N.J. Super. 464, 470 (App. Div. 2004). Each individual motion for modification is particularized to the facts of that case, and "the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." <u>Larbig</u>, 384 N.J. Super. at 21 (quoting <u>Martindell v. Martindell</u>, 21 N.J. 341, 355 (1956)).

The moving party must demonstrate a permanent change in circumstances from those existing when the prior support award was fixed. <u>See</u> <u>Donnelly v. Donnelly</u>, 405 N.J. Super. 117, 127 (App. Div. 2009) (finding a party moving for alimony modification must demonstrate changed circumstances since the preceding alimony order). "When the movant is seeking modification of an alimony award, that party must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself." <u>Lepis</u>, 83 N.J. at 157.

A court must consider statutory factors when a party seeks to modify

alimony.  N.J.S.A. 2A:34-23(k).  Once a party moves for a modification of alimony or child support, the trial judge must determine if a plenary hearing is required.  Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).  "[N]ot every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing."  Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995) (citing Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div. 1988)).  A court need not hold such a hearing when it "discern[s] no factual dispute for which a plenary hearing would be helpful in reaching resolution."  Colca v. Anson, 413 N.J. Super. 405, 422 (App. Div. 2010).

Moreover, a payee is not required to provide an updated CIS or other financial information until such time as the movant demonstrates a prima facie case of a substantial change in circumstances.  Lepis, 83 N.J. at 157; Donnelly, 405 N.J. Super. at 131; see R. 5:5-4(a)(4); see also Landau v. Landau, 461 N.J. Super. 107, 119 (App. Div. 2019) ("Because the trial court judge found plaintiff had not established a prima facie case of the changed circumstance . . ., plaintiff was plainly not entitled to discovery under Lepis.").

### III.

### A.

On the issue of alimony, defendant argues that the judge erred:  by

determining he did not experience a substantial change in his financial condition; by holding him to a higher standard of proof than a prima facie showing; in her assessment of factors, under N.J.S.A. 2A:34-23(k); in failing to hold a plenary hearing and require plaintiff to file a current CIS and other financial information; and by including the buyout of the TCW stock in the alimony calculation. We are not persuaded.

As Judge Suh explained, "in the AJOD[,] the court reached the $790,000 figure by looking at defendant's income over the preceding five . . . years . . . [and] [h]ere, a three year average of defendant's post-judgment income show[ed] an average income of roughly $1,014,380 . . . ." Noting the "considerable surplus" of the prior years; that defendant may "retain[] employment"; that his "consulting income could grow"; and that the "figure d[id] not account for any unearned income," the judge determined "defendant failed to demonstrate a prima facie case that his income . . . substantially and permanently changed due to his separation from TCW." Therefore, we are satisfied Judge Suh applied the correct prima facie standard and her analysis is unassailable.

Further, defendant argues the judge erred by "including the principal and gain payments from the forced repurchase of the TCW stock assets as income to [him] for payment of alimony . . . ." He asserts that "there is no legal support

that allows for a payor's assets . . . to be included as income for purposes of determining or modifying an alimony award."  Moreover, he avers "caselaw authority only allows a trial court to attribute income on the asset, and include said sum as income to the payor . . . in determining or modifying an alimony award."

However, "New Jersey courts have consistently held that a supporting spouse's assets may be considered in calculating an alimony award."  Miller v. Miller, 160 N.J. 408, 422 (1999) (citing Innes v. Innes, 117 N.J. 496, 503 (1990); Bonanno v. Bonnano, 4 N.J. 268, 275 (1950); Aronson v. Aronson, 245 N.J. Super. 354, 363-64 (App. Div. 1981); Stiffler v. Stiffler, 304 N.J. Super. 96, 101 (Ch. Div. 1997)).  "Real property, capital assets, investment portfolio, and capacity to earn . . . are all appropriate factors for a court to consider in the determination of alimony modification."  Id. at 420-21 (citing Innes, 117 N.J. at 503).  Defendant's attempt to limit the calculation to just the income on the TCW "buyout proceeds" is contrary to caselaw.

Further, defendant's argument that he should be permitted to insulate the "buyout proceeds" so he can "invest[] [the proceeds] for his retirement" is unavailing.  Our "courts have held that a supporting spouse cannot insulate his

or her assets from the alimony calculus by investing those assets in a non-income producing manner." Id. at 422 (citing Stiffler, 304 N.J. Super. at 102).

Additionally, the TCW stock assets were not subject to the parties' equitable distribution under the JOD or AJOD, and, therefore, could be considered in the alimony calculation. Concerns of "double dipping" — using the asset in both the equitable distribution and alimony calculations — are not present here. See Innes, 117 N.J. 496; D'Oro v. D'Oro, 187 N.J. Super. 377 (Ch. Div. 1982), aff'd, 193 N.J. Super. 385 (App. Div. 1984).

Next, Defendant argues that the judge abused her discretion in assessing the factors under N.J.S.A. 2A:34-23(k)(1-10). Again, we disagree. Judge Suh carefully reviewed the facts and fully explained her application of the statutory factors. The judge recognized that defendant was involuntarily terminated from his employment and undertook extensive efforts to obtain alternative full-time employment with no success. Therefore, she found factors (1), (2), and (3) supported his application. The judge determined factor (4), plaintiff's "circumstances," could not be determined without an updated CIS from plaintiff, but noted plaintiff was not required to file a current CIS given defendant's failure to make a prima facie showing. She held factor (5) was in "equipoise" as there was no "evidence that either party suffer[ed] from serious health issues." She

11

found factor (6) did not support defendant's modification request because he "received $1,000,000 in severance compensation" and "TCW also continue[d] to pay for his COBRA insurance." She found factors (7) and (8) did not support defendant's modification application because "despite losing his job, defendant's 'wage' income increased significantly exceeding the alimony determination of $790,000"; his "2022 income w[ould] continue to enable him to pay his current alimony obligation" because his consulting income "could grow"; he would still receive the "TCW Owners LLC payout income"; the defendant's "considerable surplus in 2020 and 2021"; and other "unearned income." Considering factor (9), the judge determined that no "temporary remedy should be fashioned" because "the record suggest[ed] that defendant [wa]s more than capable of meeting his alimony obligation." Ultimately, the judge determined:

> [b]ecause a majority of the factors do not favor a modification of defendant's alimony obligation, and giving greater significance to defendant's failure to show permanent and substantial change in circumstances with respect to his ability to pay his alimony obligation, the court denies defendant's request to modify his alimony obligation.

Under these circumstances, we find no error in Judge Suh's denial of a plenary hearing or discovery, and agree with her finding that defendant failed to show a substantial change in his financial circumstances "warranting review and

12

modification of his alimony obligations." Colca, 413 N.J. Super. at 422. Further, we conclude the judge properly declined to compel discovery, including an updated CIS from plaintiff or other financial information. As the judge correctly found, plaintiff was not required to provide an updated CIS or other financial information until such time as defendant demonstrated a prima facie case of a substantial change in circumstances. Lepis, 83 N.J. at 157. Defendant failed to meet this burden. Therefore, none of the judge's findings reveal anything "so wide of the mark" as to require our intervention. Gnall, 222 N.J. at 428.

B.

Defendant next argues that the judge erred in determining the term "child support expenses," did not include fixed costs (i.e. housing related expenses)[3] incurred on behalf the youngest daughter. He also argues that "child support expenses" include "variable and controlled expenses" and "fixed shelter expenses," including the "mortgage/property tax . . . gas, cable tv/internet, municipality and electric . . . ." These arguments fail.

---

[3] In total defendant sought $31,522.59 ($42,738.84 in variable and controlled expenses and $73,638.53 in fixed costs or $116,377.37 at plaintiff's thirty percent less an agreed upon credit of $3,390.62).

The parties' AJOD provides: "[t]he parties agree to divide child support expenses [seventy percent] to [d]efendant and [thirty percent] to [p]laintiff."[4] In addition, the AJOD provides that "[t]he marital home shall be sold . . . [and t]he parties shall utilize their respective shares to fund a 529 account for the benefit of [their youngest daughter] in the amount of the outstanding college costs, with [p]laintiff contributing [thirty percent], . . . and [d]efendant contributing [seventy percent] . . . ."

Finding "no doubt the AJOD anticipated [the youngest daughter] attending university" and that "[t]he AJOD's language . . . [wa]s not limited exclusively to college contribution/expenses (i.e., tuition)," the judge concluded "[t]he term 'child support expenses' suggest[ed] the parties contemplated that they would split expenses beyond the children's college expenses, including expenses incurred by [the youngest daughter] . . . while [she] attended university." The judge determined a contrary interpretation would require defendant "to cover nearly the entirety of [the youngest daughter]'s non-education expenses while she was in college" a result that "would be inequitable

---

[4] The parties' JOD contained the same language.

and contrary to plaintiff's responsibility to provide financial support to their child."

However, citing <u>Jacoby v. Jacoby</u>, 427 N.J. Super. 109 (App. Div. 2012), the judge noted that the two categories, "college costs" and "child support expenses," "may[] but are not required to . . . include[]" "costs to maintain one's home." She determined that "[t]he record, here, d[id] not warrant the conclusion that . . . the parties agreed to split these costs."

In support of her opinion, the judge noted: (1) "[t]he payment of . . . home carrying costs, which . . . is significant" "[wa]s not mentioned in the AJOD" and "would [have] be[en] expressly provided for"; (2) "[t]he AJOD . . . apportioned each party ample funds to maintain the marital lifestyle, and care for the children while they were in their care"; (3) "the record is void of any proof that defendant provided plaintiff with any payment towards her home costs while either child stayed with her"; and (4) "[i]f the AJOD indeed required the payment of same, as defendant argues then surely, he would have paid plaintiff for her carrying costs" while the oldest daughter resided with her.

Defendant argues the judge erred by making her decision "without the benefit of discovery, a hearing or testimony of the parties." However, other than baldly suggesting the judge should have required these additional steps, he fails

to articulate, with any specificity, the discovery he would have sought or what would have been developed during a plenary hearing. Moreover, a hearing is required to resolve an ambiguous contract only if, after considering all relevant materials, a genuine issue of facts remains. See Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135-37 (3d Cir. 1993). Here, after the judge's consideration of all relevant materials, she determined no genuine issue of fact remained. We find no error in her determination.

Further, defendant argues both, "it is respectfully submitted that 'child support expenses' include fixed shelter expenses for the child" and it "may include the costs to maintain a residence where the child returns home from college during school break and vacations," (emphasis added) citing Hudson v. Hudson, 315 N.J. Super 577, 584 (App. Div. 1998). Defendant's second iteration recites the same principle the judge relied upon, "child support expenses" "may[] but are not required to include[]" "costs to maintain one's home," citing Jacoby. However, contrary to defendant's position, the judge determined that "[t]he record, here, d[id] not warrant the conclusion that the parties agreed to split these costs." Because the judge provided factual support for her determination, we find no basis for it to be disturbed.

16

Next, defendant argues that the judge "erred in relying on [p]laintiff[]'s assertion that [d]efendant did not 'offer to pay' for post-divorce fixed shelter expenses for . . . [the oldest daughter] . . . ."  Defendant explains

> [a]t the time of their divorce, both [daughters] attended college and each [p]arent had one . . . child in their primary residential custody.  However, at the time of the [c]ourt's June 6, 2022 decision, [the oldest daughter] was twenty-five . . . years old and had graduated from the University of Maryland three . . . years prior, in May 2019, just months after the parties' divorce, whereas [the youngest daughter] was a freshman in college, at the time, and continued to reside exclusively with [d]efendant[] when she returned to his home on recess breaks from the University of Southern California.  Moreover, . . . plaintiff[] . . . confirm[ed] that [she] made no claim for contribution for [the oldest daughter]'s fixed shelter expenses for this short period of time, whether before or after [her] emancipation.

We find defendant's explanation unavailing, considering the language set forth in the JOD and AJOD regarding "child support expenses" and the fact that at the time of the divorce, each parent had primary residential custody of one daughter.  These facts militate in favor of concluding, as Judge Suh did, that "child support expenses" did not include shelter costs because each parent remained responsible for their own shelter expenses.  Moreover, because the oldest child was due to graduate in May 2019, and because the parties had widely disparate incomes at the time of the final hearing, it is unlikely plaintiff would

have agreed to contribute to defendant's fixed shelter expenses when she was aware defendant's obligation would end in a few months, in May 2019, whereas hers would continue for a few more years, until May 2022.

Additionally, given defendant's failure to offer a contribution toward plaintiff's shelter expenses before the oldest child was emancipated and plaintiff's failure to demand such a contribution, we decline to conclude the judge erred in rejecting defendant's argument that the AJOD compelled such a contribution as a "child support expense."  "Where ambiguity exists, the subsequent conduct of the parties in the performance of the agreement may serve to reveal their original understanding."  Michaels v. Brookchester, Inc., 26 N.J. 379, 388 (1958).

Despite denying defendant's request that plaintiff contribute toward his shelter expenses, the judge found "it appropriate for plaintiff to pay [thirty percent] of child support related costs such as transportation, furniture, clothing, linens and bedding, luggage, haircuts, telephone, supplies, sundries, toiletries, entertainment for college events and organizations, and spending money for [the youngest daughter] while at college."  See Jacoby, 427 N.J. Super. at 121.  The

judge ordered plaintiff to pay thirty percent of the amount the judge found "reasonable."[5]  We find no error in her factual findings or legal conclusions.

C.

Defendant also argues the judge erred in failing to find plaintiff in violation of his litigant's rights based on plaintiff's failure to pay her share of the "child support expenses" as required under the JOD and AJOD.  We disagree.

Here, the judge found "plaintiff failed to abide by the terms of the [A]JOD."  However, she also found the "term[,] child support expenses" was "ambiguous" because it failed to "specify what was included in the term." Therefore, she concluded plaintiff was "not in violation of litigant's rights for failing to [make] the appropriate interpretation of an ambiguous term."

The court rules "provide various means for securing relief and allow for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order."  In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17-18 (2015). For example, "Rule 1:10-3 allows a court to enter an order to enforce litigant's rights commanding a disobedient party to comply with a prior order or face incarceration."  Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div.

---

[5]  The judge awarded defendant $10,573.90 (reasonable child support expenses of $35,246.34 at plaintiff's thirty percent).

2012).  See also R. 5:3-7(b) (providing that "[o]n finding that a party has violated . . . [a] child support order the court may, in addition to remedies provided by [Rule] 1:10-3, grant . . . remedies [(1)-(8)], either singly or in combination," to ensure compliance).  However, "[b]efore . . . relief can be afforded, the court must be satisfied that the party had the capacity to comply with the order and was willingly contumacious."  Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3 (2023).

Here, Judge Suh found that "[w]hile the parties are contentious, neither has demonstrated the other has acted contumaciously or in bad faith."  There is no reason to disturb her findings.  Thus her legal conclusion is unassailable.

### D.

Lastly, defendant contends the judge erred in "denying [his] application for counsel fees and costs."  We are not convinced.

As Judge Suh correctly explained, "[t]he purpose of a fee award is to permit parties in unequal financial circumstances to litigate on equal footing and provides the needier party with the financial means to litigate the divorce." (citing Winegarden v. Winegarden, 316 N.J. Super. 52, 62 (App. Div. 1998)).  She also noted that "R[ule] 4:49-2(a)(1) . . . provides that in a family action, a fee allowance is permissible . . . on final determination pursuant to R[ule] 5:3-

5(c)."  Thereafter, she carefully reviewed the relevant evidence and fully explained her application of the Rule 5:3-5(c) factors.

The judge found factors:  (1) and (2) did not favor defendant's application because he had the financial means to pay his own counsel fees; (3) and (8) did not favor defendant's application because plaintiff's arguments were neither contumacious nor made in bad faith; and (4) and (6), with due consideration of R.P.C. 1.5[6], did not favor defendant's application because the extent and amount of the charged fees were reasonable.  She found factors (5) and (7) were in equipoise because "neither party was previously awarded counsel fees" and "both [p]arties obtained moderate success with their respective applications."[7]  Therefore, the judge denied defendant's application for counsel fees "[b]ecause a majority of the factors d[id] not favor his application."  We discern no abuse of discretion in the judge's denial of defendant's request for fees and costs.

In sum, we affirm the challenged provision of the June 6, 2022 order, substantially for the reasons set forth in Judge Suh's comprehensive and well-reasoned opinion.

---

[6] R.P.C. 1.5 requires "[a] lawyer's fee shall be reasonable" and provides "factors to be considered in determining the reasonableness of a fee . . . ."

[7] The judge noted that Rule 5:3-5(c) lists nine factors.  The judge's analysis did not include the ninth, "any other factor bearing on the fairness of an award."

21                                                    A-3565-21

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3565-21