963 A.2d 855 (2009)
405 N.J. Super. 117
Elizabeth DONNELLY, Plaintiff-Respondent,
v.
Gregory R. DONNELLY, Defendant-Appellant.
Docket No. A-2389-07T3.
Superior Court of New Jersey, Appellate Division.
Submitted January 14, 2009.
Decided February 2, 2009.
*857 Scott J. Bocker, Clifton, attorney for appellant.
Einhorn, Harris, Ascher, Barbarito & Frost, Denville, attorneys for respondent (Elizabeth M. Vinhal, on the brief).
Before Judges FISHER, C.L. MINIMAN and BAXTER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we review the denial of defendant's motion for a downward modification of his alimony and child support obligations. We conclude that in denying the motion the trial judge properly exercised his discretion particularly when viewed against the judge's findingsrendered after a multi-day plenary hearing approximately one year earlierthat defendant's claim of his law firm's plummeting fortunes was "unconvincing." As a result, we affirm.
The parties were married in 1984 and had three children. This divorce action was commenced in 2003 and a property settlement agreement (PSA) was executed on December 10, 2003. The parties stipulated in the PSA that defendant Gregory R. Donnelly, an attorney, would pay plaintiff Elizabeth Donnelly $1,000 per week in *858 permanent alimony and $350 per week in child support for the three children, who were born in 1994, 1995 and 1997. The PSA declared that the parties would share joint legal custody of the children, but that Elizabeth would "retain primary residential custody." A dual judgment of divorce, which incorporated the terms of the PSA, was entered on January 5, 2004.
The PSA indicates that the alimony award of $1,000 per week was based upon the imputation of income to Elizabeth in the annual amount of $20,000. It also expressly stated that an expert was retained to evaluate Gregory's income and the value of his business. The expert, according to the PSA, fixed Gregory's annual incomefor purposes of determining the appropriate level of alimony and child supportat $185,000.[1]
On April 21, 2005, Gregory moved for a reduction in his support obligations, claiming he was not earning at the $185,000 level. In his certification, Gregory criticized the expert for not "tak[ing] into account the steady decrease over the years." Gregory claimed that 1998 and 1999 were "banner years and represented the highest income [he] ever achieved since [he] began [his legal] career," and he had not since 2000 achieved the average yearly income adopted by the expert.
Gregory explained that his level of income suffered
a steadfast decrease each year ... primarily due to increased competition; rising office expenses and a decrease in gross income. The decrease in gross income is due to a marked decline in our personal injury and real estate practice. My personal injury practice has suffered a steady decrease as a result of the Lawsuit Threshold and my real estate practice has suffered due to the number of new attorneys in the area who are constantly vying for business.
Gregory then asserted that his gross earnings for the year 2004 were $97,983 and "far less [than] what [the expert] computed and is more in line with the steadfast decrease I had been experiencing." Asserting he had an after-taxes income of $79,983 for 2004, Gregory claimed that with his alimony and child support obligations (aggregating in the annual amount of $70,200), the carrying cost of partnership property (nearly $70,000 per year) and his personal expenses (estimated at $75,000), he was running at a significant deficit. He argued that it is "absolutely impossible for me to maintain my practice, maintain a living, pay [Elizabeth] and contribute to an asset for which [Elizabeth] is also an equitable owner when I have no means of obtaining the funds necessary to do so." As a result, Gregory claimed he borrowed in excess of $130,000 to meet his obligations.
On the return date, the judge made no ruling on the merits but instead provided the parties with an opportunity to engage in discovery. The judge conducted a plenary hearing over the course of a few days in December 2006, and denied Gregory's motion for reasons set forth in a thorough written decision, which included the following findings:
During this period of time that [Gregory] claims that his income has drastically reduced, he within a very short period *859 of time after the [j]udgment of [d]ivorce, traded in a 2003 Lexus automobile for a 2004 model at a cost of $58,000.00. He also sold a property in Pines Lake, and used part of the proceeds to pay down a line of credit by $90,000.00 and then bought a new home for $785,000.00 also in Wayne. In doing so he took a mortgage in excess of $600,000.00, all at the same time he claims that he was earning approximately $80,000.00 for the year. Just before this hearing, [Gregory] remarried and spent approximately $15,000.00 between his wedding and honeymoon.
In light of these circumstances and the information contained in Gregory's September 2006 case information statement, the judge viewed Gregory's income as being "in the range of $140,000.00 for the year not the $100,000.00" that Gregory claimed. The judge also rejected Gregory's claim that he was indebted to the Internal Revenue Service in the amount of $55,000 because Gregory failed to provide any documentation to support that assertion.
In addition, the judge found no proof to support Gregory's claims about his practice's "deteriorating case load." He held that Gregory's testimony, which was the only evidence provided to establish the law firm's performance, was "unconvincing" and Gregory's testimony that he was unable to support the marital standard of living was "incredulous." Although unpersuaded that Gregory's level of income had substantially deteriorated, the judge also referred to our recent decision in Larbig v. Larbig, 384 N.J.Super. 17, 894 A.2d 1 (App.Div.2006), and held he was "not convinced" that Gregory's alleged decline in business "is of [a] permanent nature which inhibits his ability to sustain himself as well as child support and alimony payments" in the amount stipulated in the PSA.
On January 10, 2007, the judge entered an order denying Gregory's motion for a modification of his support obligations. Gregory did not appeal that final order. Instead, approximately nine months after entry of the January 10, 2007 order, Gregory again moved for a downward modification of his support obligations.
In this second Lepis[2] motion, Gregory again provided a general recital of his financial situation and the status of his law practice, and asserted a further downward dip in his income. Asserting that he had only earned $38,700 for the year as of his September 24, 2007 certification, Gregory predicted he would only earn $50,000 in 2007. He also indicated he had sold his interest in the law firm's building to his partner for $175,000. Although Gregory suggested the sale evidenced his deteriorating ability to pay support, this transaction actually improved Gregory's financial situation since it eliminated the annual $70,000 cost referred to in his prior Lepis motion and also generated additional funds. Gregory used those funds to pay down certain debts and eliminate the existing alimony and child support arrearages. The case information statement filed in conjunction with this motion indicates that Gregory spent $11,354 per month on his shelter, transportation and personal needs, revealing no effort to modify the lifestyle he enjoyed with his new wife and new child despite the alleged deterioration of his law practice.
After hearing oral argument, the trial judge denied Gregory's motion. The judge was particularly troubled by the fact, which he expanded upon at length, that since the filing of the original motion *860 in 2004, Gregory chose to take on greater financial obligations than would be reasonable if his earnings were steadily dwindling. For these and other reasons, the judge denied Gregory's motion and awarded Elizabeth $4,000 in fees by way of two orders entered on December 4, 2007.
Gregory appealed the December 4, 2007 orders, arguing that
I. THE COURT ERRED WHEN IT FOUND THAT DEFENDANT DID NOT MAKE A PRIMA FACIE SHOWING OF CHANGED CIRCUMSTANCES, AND WHEN IT DENIED DEFENDANT'S REQUEST FOR A MODIFICATION OF HIS SUPPORT OBLIGATIONS OR, AT MINIMUM, DISCOVERY TO ASCERTAIN WHETHER A CHANGE HAD OCCURRED, FOLLOWED BY A HEARING.
II. THE COURT FAILED TO APPLY THE CORRECT STANDARD IN DETERMINING DEFENDANT'S CHANGE IN INCOME AS IT DID NOT MEASURE THE DECREASE IN INCOME FROM THE INCOME ORIGINALLY USED TO ESTABLISH THE SUPPORT ORDER, BUT INSTEAD INCORRECTLY MEASURED A CHANGE IN INCOME FROM DEFENDANT'S INCOME EARNED IN THE ONE YEAR PRIOR TO THE DIVORCE.
III. THE COURT FAILED TO RECOGNIZE AN IMPOSSIBILITY OF PERFORMANCE AS THE DEFENDANT IS CURRENTLY EARNING LESS THAN HIS ANNUAL SUPPORT OBLIGATIONS.
IV. THE COURT ERRED WHEN IT REFUSED TO REQUIRE PLAINTIFF TO SUBMIT A RECENT CIS; WHEN IT REFUSED TO IMPUTE INCOME COMMENSURATE WITH PLAINTIFF'S PRIOR WORK EXPERIENCE; AND WHEN IT ARBITRARILY IMPOSED ITS ESTIMATION OF WHAT THE PLAINTIFF COULD EARN.
V. THE COURT ERRED WHEN IT REFUSED TO MODIFY DEFENDANT'S SUPPORT OBLIGATION BASED UPON HIS CERTIFICATION AND THE EXHIBITS ANNEXED THERETO.
VI. THE COURT ERRONEOUSLY FOUND THAT THE DEFENDANT'S REDUCTION IN INCOME WAS A TEMPORARY CHANGE IN CIRCUMSTANCES NOTWITHSTANDING THAT THE REDUCTION HAS BEEN ONGOING FOR 4 YEARS.
VII. THE COURT ERRED IN AWARDING COUNSEL FEES TO PLAINTIFF BECAUSE THE [A]WARD WAS BASED UPON ASSUMPTIONS NOT ON THE RECORD; AND THE COURT ARBITRARILY DETERMINED THE AWARD IN VIOLATION OF APPLICABLE COURT RULES AND CASE LAW.
VIII. THE COURT ACTED IN AN ARBITRARY AND CAPRICIOUS MANNER WHICH WAS PREJUDICIAL; HAS CONSISTENTLY ACTED IN THAT MANNER TO DEFENDANT; MADE FACTUAL ASSUMPTIONS NOT ON THE RECORD; AND FAILED TO COMPLY WITH APPLICABLE COURT RULES AND EXISTING CASE LAW, WHEREBY IF ANY ASPECT OF THIS MATTER IS REMANDED, IT SHOULD BE ASSIGNED TO A DIFFERENT COURT.
We find no merit in these arguments and affirm.
We first turn to the last point raised by Gregory because of the caustic tone of the point heading, which asserts *861 the judge acted arbitrarily and capriciously and ignored court rules in disposing of the motion. The text of Gregory's brief regarding this point, however, pales in comparison to the content of the point heading; the brief instead largely cites to the colloquy during oral argument which reveals only that the judge was attempting, through his rigorous and insightful questioning, to test the worth and weight of Gregory's contentions. We view this as nothing more than the usual give-and-take between judge and attorney that is typical of motion practice, particularly in the Family Part, and quite beneficial and helpful in a court's attaining of a true understanding of the parties' contentions. We find the judge's comments to be entirely appropriate.
In addition, Gregory contends that the judge revealed a commitment to his prior findings of fact in this case. That is undoubtedly true, but Gregory has provided no legitimate reason why the judge should not have continued to rely upon those findings.[3] Indeed, because those earlier findings were based upon the judge's examination of the evidence and assessment of the witnesses' credibility and were not challenged on appealthey were not only entitled to continued weight in the trial court in subsequent proceedings, but are certainly entitled to our deference at this time as well. Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998). We, thus, reject the contention that the trial judge acted inappropriately in relying upon his earlier, unimpeached findings, and conclude there is no legitimate reason why future proceedings should be handled by a different Family Part judge. To the contrary, considering the judge's familiarity with the matter, it would be inimical to the efficient and fair administration of justice to mandate reassignment of this case. See O'Brien v. O'Brien, 259 N.J.Super. 402, 405-06, 613 A.2d 1170 (App.Div.1992).
Turning to the merits of the appeal, we find no error in the judge's denial of Gregory's motion. Gregory argued he was on course to earn approximately $50,000 for the calendar year 2007, and that this presented a prima facie claim of changed circumstances to warrant the exchange of discovery and a plenary hearing. We agree with the judge's holding that this assertion was subject to the analysis we described in Larbig and that such an analysis mandated a denial of the motion.
That is, as we held in Larbig, "[e]ach and every motion to modify an alimony obligation `rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" 384 N.J.Super. at 21, 894 A.2d 1 (quoting Martindell v. Martindell, 21 N.J. 341, 355, 122 A.2d 352 (1956)). Here, the judge conducted a plenary hearing in December *862 2006 to examine Gregory's similar allegations regarding his income level and his law firm's future expectations, and rendered findings of fact that resulted in a rejection of Gregory's contention that he was financially incapable of meeting the support obligations contained in the PSA. In fact, the judge found a lack of credibility in Gregory's testimony regarding the decline of his law practice and rejected Gregory's contention that his income at the time was only $100,000. Instead, the judge found that Gregory's case information statement would suggest that he likely earned approximately $140,000 for the calendar year 2006.
As we have already indicated, the judge was not required to wipe the slate clean and consider a similar contention regarding Gregory's earnings less than one year after the prior order as if the earlier hearing had never occurred. To the contrary, the judge was required to consider not whether there was a substantial change since the 2003 PSA but whether there was a substantial change since he rendered his fact findings in December 2006. Admittedly, a sworn assertion that the obligor's income had fallen to $50,000 strongly suggests a substantial change in circumstancesif that is all that is considered. The judge correctly observed, however, that the focus must also be on the length of time that had elapsed since the last milepost in these post-judgment proceedings. In Larbig, for example, we affirmed a trial judge's determination that a motion for a reduction in support filed "a mere twenty months after the parties' execution of the PSA," 384 N.J.Super. at 22, 894 A.2d 1, alleged only a temporary change. See also Lepis, supra, 83 N.J. at 151, 416 A.2d 45 ("Courts have consistently rejected requests for modification based on circumstances which are only temporary...."). As we explained in Larbig:
There is, of course, no brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation. Instead, such matters turn on the discretionary determinations of Family Part judges, based upon their experience as applied to all the relevant circumstances presented, which we do not disturb absent an abuse of discretion.
[384 N.J.Super. at 23, 894 A.2d 1.]
Here, the judge had a full understanding of the past circumstances, having not only presided over a divorce trial that was apparently settled in mid-stream,[4] but also having heard an earlier Lepis motion, conducted a multi-day hearing regarding those allegations and made findings that have considerable bearing on the allegations made in Gregory's second Lepis motion. After carefully reviewing the judge's earlier findings and the allegations contained in the most recent Lepis motion, we are satisfied that the trial judge properly exercised his discretion in concluding that Gregory had returned to court far too soon to obtain relief. Considering that this second Lepis motion was filed only nine months after the denial of the first Lepis motion, Gregory failed to demonstrate that his alleged change in circumstances was anything but temporary.
As we also observed in Larbig, "what constitutes a temporary change in income should be viewed more expansively when urged by a self-employed obligor," as here, who is "in a better position to present an unrealistic picture of his or her actual income than a W-2 earner." 384 *863 N.J.Super. at 23, 894 A.2d 1. The judge recognized this in denying Gregory's motion; indeed, the judge's decision on Gregory's first Lepis motion reflects a determination that Gregory's actual income was greater than what was urged. Again, the judge was entitled to rely upon those earlier findings in determining whether Gregory was entitled to either discovery or a hearing with regard to the second Lepis motion that followed so soon after the judge's findings of fact regarding the first Lepis motion.
In addition, as the judge perspicaciously recognized, the change in Gregory's income, if true, was only one part of the calculus to be considered in ruling upon the motion. Equally important was the fact thatdespite Gregory's assertion that changes in the areas of law in which he practiced had caused a reduction in incomeGregory had taken on considerable debt and adopted a lavish lifestyle inconsistent with the way his law practice was allegedly trending. Among other things, Gregory had purchased an expensive home burdened with a large mortgage, as well as a new, expensive car. The judge's comments, upon which Gregory partially bases his fallacious contention that the judge acted arbitrarily or capriciously, correctly focused on Gregory's inequitable attempt to have Elizabeth and their children bear the brunt of the luxurious lifestyle Gregory adopted with his new wife in the face of his allegedly dwindling law practice and claimed inability to meet his existing support obligations. Rather than suggesting arbitrariness on the judge's part, the judge's comments exhibit a legitimate basis for denying the motion as well as good common sense and sound advice:
But, again, part of the problem is that the defendant created his own problem. Knowing what his obligation was to the plaintiff, as I said a year ago, he went out and spent more money, increased his overhead and said I can't make it. Well, then don't increase your overhead. Nobody tells you to buy an $800,000 house, nobody tells you to buy a $58,000 car, nobody tells you to do all these things. If you don't have it, you cut back. Even though it may hurtyou got to cut back.... Take a small house for a couple of years, rebuild and then sell it. You don't have to drive a big Lexus, you don't have to be showy to anybody. You can't afford it, you bite the bullet, you do what you got to do, but you have obligations to your children and to your ex-wife, but by doing what you have done here for whatever your reasons were, you can't come here andand cry wolf....
We agree with the judge's determination that the alleged reduction in income was only part of the overall circumstances he was required to consider in determining whether Gregory met the burden of demonstrating a right to either discovery or a plenary hearing on his second Lepis motion.[5] The trial court must considerin both fixing and altering a support obligationwhat is equitable and fair in all the circumstances. Lepis, *864 supra, 83 N.J. at 158, 416 A.2d 45; see also Smith v. Smith, 72 N.J. 350, 360, 371 A.2d 1 (1977). This requires not only an examination of the parties' earnings but also how they have expended their income and utilized their assets. As long as Gregory continued to incur monthly expenses in excess of $11,000, the trial judge was entitled to conclude that Gregory's second motion was disconnected from the type of equitable underpinnings inherent in the right to relief established by Lepis.[6] The trial judge here quite correctly recognized the inequity in Gregory's request for a downward modification of his obligations to Elizabeth and their three children while he maintained a lavish lifestyle at their expense.
Lastly, Gregory argues that the trial judge erred in refusing to require Elizabeth to file a case information statement with regard to his Lepis motion. We reject this contention. An opponent of a Lepis motion is not required to provide a case information statement or disclose financial information until such time as the movant demonstrates a change in circumstances. Lepis, supra, 83 N.J. at 157, 416 A.2d 45. This showing may relate to changes in the movant's financial circumstances, or the opponent's, or a combination of both:

Lepis does not stand for the proposition that a prima facie showing of changed circumstances by an applicant must relate solely to his or her own finances. While it is probably fair to say that this is the way most cases are presented because litigants are more fully aware of their own finances than of those of the opposing party, under Lepis, a payor spouse is as much entitled to a reconsideration of alimony where there has been a significant change for the better in the circumstances of the dependent spouse as where there has been a significant change for the worse in the payor's own circumstances. Likewise, a movant may make a prima facie showing of changed circumstances under Lepis by citing a combination of changes on the part of both parties which together have altered the status quo which existed at the time of the entry of the support order under review.
[Stamberg v. Stamberg, 302 N.J.Super. 35, 42, 694 A.2d 592 (App.Div.1997) (citation omitted).]
We have already determined that the judge did not abuse his discretion in finding that Gregory failed to demonstrate that his circumstances had changed to the point where he was entitled to discovery or an evidentiary hearing. Gregory also argued that Elizabeth's financial circumstances improved or could improve beyond the $20,000 annual income imputed to her *865 in the PSA. We are satisfied that the judge did not abuse his discretion in concluding that Gregory's general assertions regarding Elizabeth's lifestyle and her ability to earn at a greater rate than imputed were insufficient to sustain Gregory's burden.[7] In the absence of a prima facie showing of changed circumstances either Gregory's, Elizabeth's, or a combination of bothElizabeth was not required to submit a current case information statement or provide any other discovery. Lepis, supra, 83 N.J. at 157, 416 A.2d 45; Stamberg, supra, 302 N.J.Super. at 42, 694 A.2d 592.
We find Gregory's remaining arguments to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The expert fixed Gregory's income by taking an average of his annual income for the five prior years:

 1998 $301,705
 1999 $219,167
 2000 $184,983
 2001 $165,452
 2002 $130,000

Gregory, as signified by his execution of the PSA, consented to the adoption of $185,000 as representative of his annual income at that time.
[2] Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980).
[3] Among several other similar authorities, Gregory mistakenly alludes to N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 617, 512 A.2d 438 (1986), in which, after reversing an order, the Court remanded to a different judge because the prior judge would undoubtedly feel committed to his earlier findings and would have difficulty reassessing or reconsidering the matter following reversal. See also R. 1:12-1(d). That circumstance is quite distinguishable from the present. First, we have no cause to reverse the judge's determination or remand for a re-examination of the same issues. Second, in this case, the judge conducted a plenary hearing and rendered findings approximately one year earlier. Those findings were not challenged on appeal; instead, by way of a second Lepis motion, the judge was, in essence, asked to revisit the parties' situation while it remained quite familiar to him and, in many respects, unchanged. In that situation, the judge was certainly permitted to rely upon the facts previously found.
[4] We assume this from the judge's comments during oral argument on the second Lepis motion. The appendices that have been filed do not contain any transcripts of the divorce trial or the hearing that was conducted regarding the first Lepis motion.
[5] We also discern from the trial judge's oral decision on the second Lepis motion that he was additionally persuaded by Gregory's failure to explain what he had done to better his allegedly deteriorating law practice. As we have recognized, it is not enough that an obligor demonstrate a reduction in income; the obligor must also demonstrate how he or she has attempted to improve the diminishing circumstances. See, e.g., Aronson v. Aronson, 245 N.J.Super. 354, 361, 585 A.2d 956 (App. Div.1991) (concluding that a movant had failed to present a prima facie case of changed circumstances when "what he did was to allow his practice to continue to diminish unchecked while bemoaning his fate"); Arribi v. Arribi, 186 N.J.Super. 116, 118, 451 A.2d 969 (Ch.Div. 1982) (finding that the "pervading philosophy" in our precedents is that "one cannot find himself in, and choose to remain in, a position where he has diminished or no earning capacity and expect to be relieved of or to be able to ignore the obligations of support to one's family"). Gregory's second Lepis motion failed to appreciate this as well.
[6] Apparently, in finally recognizing that his expensive new home constitutes a considerable barrier to the persuasiveness of any present or future claim of hardship, Gregory has attempted to convey to us, in the brief he filed in this court, that steps have been taken to sell the home. He has also asserted that the current status of those alleged efforts belies the judge's understanding of the home's worth and marketability. Those allegations were not before the trial judge and, thus, have no rightful place in the record in this appeal. Scott v. Salerno, 297 N.J.Super. 437, 447, 688 A.2d 614 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997); Middle Dep't Insp. Agency v. Home Ins. Co., 154 N.J.Super. 49, 56, 380 A.2d 1165 (App.Div. 1977), certif. denied, 76 N.J. 234, 386 A.2d 858 (1978). The inclusion of those unsworn assertions in the record on appeal was utterly improper. We have disregarded those assertions in disposing of the appeal.
[7] As the judge observed in deciding the first Lepis motion, following the divorce, Elizabeth was required to move from a five-bedroom home on two-and-one-half acres to a three-bedroom home situated on approximately one-third of an acre. Her mortgage on the property, according to Gregory's motion papers, amounted to $95,000. Implicit in the judge's decision on the second Lepis motion was the incongruity he found in Gregory's attempt to assert that he was entitled to a reduction in his support obligation because of Elizabeth's more economical financial circumstances.