**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0224-17T1

JOANNE K. SNYDER,

    Plaintiff-Appellant,

v.

HOWARD I. SNYDER,

    Defendant-Respondent.

_____

Argued August 8, 2018 — Decided August 24, 2018

Before Judges Hoffman and Currier.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Burlington
County, Docket No. FM-03-1076-11.

Ronald G. Lieberman argued the cause for
appellant (Cooper Levenson, PA, attorneys;
Ronald G. Lieberman, on the briefs).

Jonathan Stone argued the cause for
respondent.

PER CURIAM

In this matrimonial action, plaintiff Joanne K. Snyder
appeals from the provisions of the August 4, 2017 order compelling
her to execute a Qualified Domestic Relation Order (QDRO) for the

division of her ex-husband's pension.  After a review of the contentions in light of the record and applicable principles of law, we affirm.

After thirty years of marriage, the parties were divorced in June 2011.  A Final Judgment of Divorce incorporated the parties' Property Settlement Agreement (PSA).  Defendant Howard I. Snyder had a pension in pay status at the time of the divorce from which he was receiving established payments.  This pension is the subject of this appeal.

Paragraph 3.5 of the PSA addressed the parties' retirement accounts and pension plans.  Specifically as to defendant's pension in pay status, it stated:

> Wife shall be entitled to $2800.00 a month from Husband's Pension with the remaining monthly payout being the sole property of the Husband.  Wife will remain on the bank account where the funds from the Pension are currently deposited until such time as a [QDRO] can be drafted and the . . . Pension [is] divided as per the above specifications.  Until such time as a QDRO is completed, wife may withdraw $2800.00 a month from the bank account that receives the monthly Pension payments.

Paragraph 4.4, entitled "Income Tax Effect," provided: "All of the foraging(sic) transactions as set forth in Article III, (Equitable Distribution), are intended to be tax-free events."  It further stated that any financial events required under Article 6

of the PSA were "intended to be non-taxable events under the Internal Revenue Code 1041."

For more than five years after the divorce, as per the PSA, plaintiff withdrew $2800 a month from the joint bank account as her share of defendant's pension. During this time period defendant paid the tax liability for the entire distribution. In February 2016, defendant self-prepared a QDRO and presented it to the pension plan administrator. Plaintiff's counsel objected to the form of the QDRO, the plan administrator took no action, and plaintiff continued to withdraw $2800 tax-free from the bank account.

In June 2017, defendant filed a motion, in pertinent part, compelling plaintiff to execute the QDRO. Plaintiff's cross-motion asserted she was entitled to receive $2800 net of taxes under the PSA, and judicial estoppel prevented defendant from requiring her to pay taxes on her share of the distribution, which would result in a downward modification of her net monies.

Following extensive oral argument, the Family Part judge issued an oral decision on August 4, 2017, memorialized in an order under the same date. In applying the plain language of the PSA, the judge noted that Paragraph 3.5 did not address the "tax consequences of distributions received by the Wife from Husband's pension." Although he acknowledged the statement in Paragraph 4.4

that the parties intended transactions in Article III to be non-taxable events under Internal Revenue Code (IRC) 1041, the judge advised that Section 1041 did not apply to the tax consequences of pension distributions made pursuant to a QDRO. A pension distribution was governed by Sections 402(e)(1)(A) and 72 of the IRC, which provided that a spouse or former spouse of a participant who receives a distribution or payment under a QDRO is an "alternate payee," and must pay federal income tax on the distribution or payment.

Concluding that there was "no explicit provision" in the parties' PSA that contradicted the pertinent sections of the tax code, the judge resolved that, going forward, plaintiff was required to pay federal income tax on her share of defendant's pension; the $2800 was deemed a gross figure subject to tax obligations under the QDRO. Defendant's motion was granted and plaintiff was ordered to execute the QDRO.

On appeal, plaintiff argues that the parties' course of conduct for five years evidenced an intent that plaintiff was to receive a distribution of $2800 per month from defendant's pension net of taxes, and that the judge erred in not ordering a plenary hearing. Plaintiff also argues, for the first time, that she should not have to pay taxes on her share of the pension distribution despite the existence of tax law to the contrary.

Our standard of review requires us to give considerable deference to the discretionary decisions of Family Part judges. Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009) (citing Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006)). That is so "[b]ecause of the family courts' special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Unlike a trial judge's fact and credibility findings, the judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, (1995)).

Consistent with New Jersey's "'strong public policy favoring stability of arrangements' in matrimonial matters," where matters in dispute in a post-judgment matrimonial motion are addressed in a PSA, courts will not "unnecessarily or lightly disturb[]" the agreement so long as it is fair and equitable. Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)); see also Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (a matrimonial agreement is enforceable so long as it is not inequitable); Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)) (PSAs are entitled to "'considerable weight with respect to their

validity and enforceability' in equity, provided they are fair and just").

Plaintiff asserts that she has relied on receiving $2800 gross as her share of defendant's pension for more than seven years and, therefore, the doctrine of laches requires the perpetuation of this arrangement. We disagree.

As the judge stated, the PSA permitted plaintiff to withdraw $2800 monthly from a joint bank account. This arrangement was to continue until a QDRO was executed to divide the pension monies. Although paragraph 3.5 did not address the tax consequences to either party following the execution of the QDRO, paragraph 4.4 informed that all transactions under Article III were to be non-taxable events, referring to IRC 1041. Pursuant to those provisions, plaintiff has received $2800 monthly, free of taxes, as her share of the pension distribution for more than seven years.

Although the PSA requires the preparation of a QDRO to divide the pension account, it is silent as to the tax consequences of the division of the account under the QDRO. Plaintiff does not dispute that a tax liability is incurred on a pension distribution, instead, she argues that since defendant paid the taxes on the full distribution for so many years, she has become reliant on that arrangement.

6

We agree, as did the trial judge, that defendant failed to comply with his responsibility for drafting and submitting a QDRO for the division of the account. However, defendant's neglect was to his detriment and resulted in a windfall for plaintiff. She has not paid any taxes on her share of the pension distribution from June 2011 to the present time.

The PSA does not address the tax consequences to the parties following the entry of a QDRO. The IRC imposes a tax liability on pension distributions. Under the circumstances present here, we are satisfied the trial judge's determination that each party be responsible, going forward, for the tax owed on their respective shares of the pension distribution is a fair and just reading of the PSA.

Although defendant was dilatory in the preparation of the QDRO, plaintiff did not pursue the division of the account either. Instead, she collected a tax-free share of the pension for more than seven years. The equities favor the conclusion that the gross distribution paid to plaintiff of $2800 is subject to the requisite imposition of taxes.

We discern no abuse of discretion in the judge's denial of a plenary hearing, and we decline to address plaintiff's argument that the trial court could have entered an order contrary to

existing tax laws as it was not raised to the trial court.  See Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION