**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5071-18T3

M. B.,

    Plaintiff-Appellant,

v.

D. B.,

    Defendant-Respondent.

_____

Argued telephonically May 19, 2020 –
Decided June 18, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-11-0252-09.

Howard L. Felsenfeld argued the cause for appellant (Felsenfeld & Clopton, PC, attorneys; Howard L. Felsenfeld, on the briefs).

Kimberly Ann Greenberg argued the cause for respondent (Destribats Campbell, LLC, attorneys; Kimberly Ann Greenberg, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from an order entered by the Family Part on June 24, 2019, on remand from this court, denying her applications for a modification of alimony and the award of attorney's fees.[1] We affirm.

I.

The parties were married in 1990 and two children were born of the marriage, a son born in 1997 and a daughter born in 1999. The parties divorced in October 2010. The dual final judgment of divorce (FJOD) entered at that time incorporated the parties' Marital Settlement Agreement (MSA), which resolved issues arising from the dissolution of the marriage.

The FJOD provides, among other things, that the parties would share joint legal custody of the children and plaintiff would be the parent of primary residence. It requires defendant to pay plaintiff alimony for fifteen years, beginning in the amount of $30,000 per year, with periodic reductions thereafter. The FJOD further provides that defendant would pay plaintiff thirty-three percent of his net bonuses and twenty-five percent of any stock provided to defendant by his employer. The FJOD also requires defendant to pay child support in the amount of $154 per week.

---

[1] We use initials to identify the parties because the record includes personal information of a sensitive nature. See R. 1:38-3(d)(3).

A-5071-18T3

In 2010, plaintiff admitted to alcohol and drug abuse. She entered a treatment facility and relinquished custody of the children to defendant. In September 2010, the court terminated defendant's child-support obligation and later ordered plaintiff to pay defendant $246 per week in child support.

In October 2015, plaintiff filed a motion seeking various forms of relief, including an allocation of the children's college expenses and a downward modification of her child-support obligation. Defendant opposed plaintiff's motion and filed a cross-motion seeking reimbursement of Social Security Disability (SSD) payments plaintiff had received for the parties' children. In March 2016, plaintiff filed a supplemental motion seeking an increase in alimony and discovery regarding defendant's finances.

In May 2017, the Family Part judge conducted a plenary hearing on the motions. Both parties testified. In January 2017, the judge filed an order and accompanying statement of facts and conclusions of law. The judge granted defendant's motion for reimbursement of the SSD payments and denied plaintiff's motion for a modification of alimony. The judge also denied both parties' applications for attorney's fees.

Plaintiff appealed from the order. We affirmed the trial court's order requiring reimbursement of the SSD payments but remanded the matter to the

3

trial court to address plaintiff's motion for an increase in alimony and to make more specific findings regarding the denial of plaintiff's motion for attorney's fees. M.B. v. D.B., No. A-2483-16 (App. Div. Oct. 5, 2018) (slip op. at 9-13).

On remand, the parties submitted briefs and agreed the judge could render a decision based on the record from the prior hearing. On June 24, 2019, the judge issued an order and statement of reasons denying plaintiff's motion for an increase in alimony and for attorney's fees. This appeal followed.

On appeal, plaintiff contends: (1) the trial court erred by finding that there was no substantial change of circumstances warranting a modification of alimony and denying the motion for counsel fees; (2) the court erred by failing to recognize that her disability was a substantial, post-judgment change of circumstances; and (3) if the court remands the matter to the trial court, it should be assigned to a new judge.

II.

We turn first to plaintiff's argument that the Family Part judge erred by denying her motion for an upward modification of alimony. Plaintiff contends it was error for the court to average defendant's pre-judgment and post-judgment income in determining whether there has been a substantial change of circumstances. She contends the court erred by finding that she had income and

benefits which were approximately the amount of income imputed to her in the FJOD. In addition, plaintiff argues that her disability and reduced income constitute a substantial change of circumstances, which warrant an increase in alimony.

We note initially that the scope of our review of orders of the Family Part is limited. The trial court's factual findings "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). However, a trial court's legal conclusions are not entitled to special deference and are reviewed de novo. Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012).

New Jersey has a long-standing public policy favoring the use of voluntary agreements to resolve marital controversies. Konzelman v. Konzelman, 158 N.J. 185, 193 (1999). "[F]air and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)). However, a court should enforce a matrimonial agreement only if it is "fair and equitable." Lepis v. Lepis, 83 N.J. 139, 148 (1980).

Moreover, "such agreements should receive continued enforcement without modification only so long as they remain fair and equitable." Id. at 148-

Our courts have the equitable power to modify alimony and support orders at any time. Id. at 145 (citing N.J.S.A. 2A:34-23). Alimony and support orders are subject to modification based "on a showing of changed circumstances." Id. at 146 (citations omitted). We "must give due recognition" of the broad discretion afforded to trial judges in addressing motions to modify alimony. Reese v. Weis, 430 N.J. Super. 552, 571 (App. Div. 2013) (quoting Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009)).

Here, the FJOD provides that, effective January 1, 2011, defendant shall pay alimony at a rate of $30,000 per year for 2011 and 2012. For 2013 and 2014, alimony was $24,000 per year; for 2015 and 2016, $20,000 per year; for 2017 through 2020, $16,000 per year; and for 2021 through 2025, $12,000 per year. In addition to the alimony payments, the FJOD requires defendant to pay plaintiff unallocated support in the amount of thirty-three percent of his net bonuses, and twenty-five percent of any stock his employer provides as part of his compensation package.

The FJOD states that these provisions were negotiated between the parties based on defendant's then-current salary of $143,000 per year and imputed annual income to plaintiff of $50,000, as well as "defendant's historical receipt

from his employer of substantial bonus and stock as additional income."  The

FJOD also states that:

> [i]n the event plaintiff receives variable income in the future which results in her income substantially higher than the [$50,000] imputed salary to her or in the event defendant's income structure changes so that he is receiving substantially less than [$143,000] salary or substantially more bonus and stock than he has historically received, either party shall have the right to make application to the [c]ourt for modification of the above provisions based on a substantial and an unanticipated change of circumstances.

In its January 2017 decision, the judge initially found that plaintiff was essentially receiving, or had the ability to receive, $58,000 in income each year, which was not a substantial change from the $50,000 imputed to her in the FJOD.  The judge noted that defendant's income had increased but found that under the FJOD, plaintiff could only seek a modification of alimony if defendant's base income decreased or there was a substantial increase in the amount of bonus and stock he had received in his compensation package.  The judge concluded that there had been no substantial change in circumstances that would warrant an upward modification of alimony.

In our opinion on plaintiff's appeal, we stated that the trial court erred by focusing only on defendant's base salary and failing to address "the significant increase in defendant's bonus and stock income."  M.B., slip op. at 11.  We noted

7

that the FJOD allows plaintiff to seek a modification of alimony in the event defendant received "more bonus and stock than he has historically [received]." Ibid. We stated:

> Defendant's base salary increased from approximately $140,000 in 2009 to $165,000 in 2014. Defendant's total income increased from approximately $180,000 in 2009 to approximately $280,000 in 2014. Therefore, his bonus and stock income increased from approximately $40,000 in 2009, to approximately $115,000 in 2014. Because the trial court failed to consider the nearly three-fold increase in defendant's bonus and stock income, we remand for the court to determine whether defendant's bonus and stock income increases sufficiently to warrant an increase in alimony, and if so, the amount of increase warranted.
>
> [Ibid.]

In her decision on remand, the Family Part judge found that in the period from 2006 to 2008, defendant's base annual salary averaged $131,000, and during that time, his average income from bonuses and stock was about $92,000 per year. The judge therefore determined that defendant's total pre-judgment income, including bonuses and stock, averaged $223,000 per year.

The judge further found that post-judgment, in the period from 2011 to 2014, defendant's average base annual salary was $153,863, and his average income from stock and bonuses was $101,137. The judge found that defendant's total average annual income post-judgment was $255,000 per year.

8

The judge noted that defendant's post-judgment increase in his income from bonuses and stock was about ten percent. The judge also pointed out that the FJOD requires defendant to pay a portion of this variable income to plaintiff. The judge found this "modest" increase in defendant's income from bonuses and stock did not trigger the provision of the FJOD which allows plaintiff to seek a modification of alimony.

In addition, the judge found that during the marriage, plaintiff had been employed as a personal injury protection manager for an insurance company and she had been earning $92,000 per year. The judge noted that plaintiff left that position in 2007 and when the parties divorced, plaintiff was unemployed. In January 2011, plaintiff became eligible for SSD payments.

The judge noted that while plaintiff's substance abuse and mental-health diagnosis had prevented her from working and caring for the children, her doctor had cleared her to return to work. She began working part-time for ten hours per week, earning $10 per hour. The judge noted, however, that on her Case Information Statement (CIS), plaintiff indicated she was unemployed, which was "a seemingly voluntary act which should not inure to her benefit."

The judge found that plaintiff had not established a basis for modification under the circumstances permitted in the FJOD. The judge also considered the

A-5071-18T3

factors under <u>Lepis</u> for modification of a support order. The judge found plaintiff failed to show a substantial change of circumstances that would warrant an increase in alimony. There is sufficient credible evidence in the record to support the trial court's findings of fact and conclusions of law.

Plaintiff argues, however, that the judge erred by averaging defendant's income for the period 2011-2014 in determining whether there should be an upward modification of alimony. Plaintiff has not cited any authority that would preclude the trial court from viewing a party's income over time in deciding whether there had been a substantial change of circumstances.

Indeed, as noted in <u>Lepis</u>, "[c]ourts have consistently rejected requests for modification based on circumstances which are only temporary[.]" <u>Lepis</u>, 83 N.J. at 151. There is no "brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation." <u>Larbig v. Larbig</u>, 384 N.J. Super. 17, 23 (App. Div. 2006). "[S]uch matters are committed to the discretionary determinations of the Family Part judges, based upon their experience as applied to all the relevant circumstances, . . . " <u>Ibid.</u> Here, the judge did not abuse her discretion by averaging defendant's income in determining whether a modification of alimony was warranted.

Plaintiff also contends the judge erred by finding that she was receiving, or could receive, substantially the same amount of income that had been imputed to her in establishing the alimony obligation, as provided in the FJOD. She contends the judge erroneously included her alimony payments in calculating her potential income. The record does not support plaintiff's arguments.

As we noted previously, according to the FJOD, defendant's alimony obligation was based in part on the imputation of $50,000 of annual income to plaintiff. The record shows that post-judgment, plaintiff was receiving about $30,000 each year in SSD payments. The judge noted that plaintiff had the ability to earn an additional $12,000 of income per year without a reduction of her SSD benefits.

In addition, plaintiff was receiving about $8000 each year from her share of defendant's bonuses and stock. Thus, plaintiff was receiving, or could receive, about $50,000 per year, which was the amount imputed to her in the FJOD. The record shows that, in her analysis, the judge did not take into account the alimony payments that plaintiff was receiving.

Plaintiff further argues the judge erred by failing to find her disability constituted a substantial post-judgment change of circumstances. She contends that at the time of the FJOD, the parties anticipated she would become re-

11

employed and therefore imputed annual income of $50,000 to her. She asserts that after the divorce, the Social Security Administration (SSA) granted her application for disability benefits. She contends she has not become re-employed and she continues to receive about $30,000 per year in SSD benefits.

In her decision, the judge noted that in 2007, plaintiff was diagnosed with bipolar disorder, Attention Deficit Hyperactivity Disorder, and anxiety, and in 2011, she was admitted to rehabilitation facilities for drug and alcohol abuse. The judge pointed out that under Lepis, "disability, illness, or infirmity" are "permissible grounds" to re-examine support "when such conditions" occur post judgment. Lepis, 83 N.J. at 151.

The judge observed, however, that plaintiff's application for SSD benefits was pending before the entry of the FJOD. Even so, in the FJOD, the parties anticipated that plaintiff could return to full-time employment within a specified period of time. Therefore, the parties agreed that alimony would be paid for fifteen years, initially in the amount of $30,000 per year and thereafter in reduced amounts.

Thus, while the SSA granted plaintiff's application for SSD benefits, and while she was receiving those payments, she had been cleared to return to work. The judge noted that plaintiff could earn up to $12,000 per year without

jeopardizing her SSD benefits. Therefore, the judge did not err by finding that the SSA's determination that plaintiff was disabled was not a substantial change of the circumstances that existed at the time of the divorce.

We have considered plaintiff's other contentions regarding the trial court's decision on her motion to modify alimony. We conclude these arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

## III.

Plaintiff argues the Family Part judge erred by denying her request for an award of attorney's fees. Plaintiff sought fees for: her motion for an upward modification of alimony; the plenary hearing on that motion; the appeal from the trial court's order requiring reimbursement of the SSD payments and denying an increase in alimony; and the proceedings on remand.

On appeal, plaintiff argues that the parties' disparity in income warrants the award of counsel fees. She contends that in making the decision on her motion for counsel fees, the judge erroneously considered her failure to pay a share of the children's college costs, as previously ordered by the court. She also contends the judge seemed to penalize her for proceeding in bad faith. We find no merit in these contentions.

We review a trial court's order pertaining to the grant or denial of a motion for attorney's fees under an abuse-of-discretion standard. Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004). We will disturb the trial court's determination regarding counsel fees on the "rarest occasions, and then only because of a clear abuse of discretion." J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

N.J.S.A. 2A:34-23 provides that in a matrimonial action, the trial court may award counsel fees. In considering an application for fees, the court should consider "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." Ibid.

The applicable court rule is Rule 5:3-5(c), which lists the factors to be considered by the trial court in determining whether to award fees. Those factors are

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Ibid.]

Here, the Family Part judge considered the financial circumstances of the parties and noted that defendant is in a better financial position than plaintiff. The judge also noted that although defendant has the ability to pay plaintiff's counsel fees, he was already paying all of the children's college costs, not the seventy-one percent that the court had allocated to him. The judge stated that on her CIS, plaintiff had inflated certain expenses. The judge found the parties had the ability to pay their own attorney's fees.

In addition, the judge found the parties did not act in bad faith before or after the plenary hearing in this matter. The judge stated that both parties had "basically followed" the MSA. The judge found that while plaintiff had a serious substance-abuse problem, this did not warrant a finding that she had acted in bad faith.

The judge further found that plaintiff incurred attorney's fees totaling $46,764.84, and defendant incurred counsel fees in the amount of $41,127.58. The court had not previously awarded either party attorney's fees. The court noted that plaintiff had paid her attorney $4,908.28, and defendant had paid his attorney $8725.

The judge also considered the results the parties had obtained, noting that plaintiff had been ordered to reimburse defendant $74,584 for the SSD payments she had received for the children. However, the court had denied plaintiff's motions for an increase in alimony and counsel fees. The judge noted that the parties had exchanged discovery.

The judge added that while plaintiff's serious substance-abuse problem and related conduct did not result in a finding of bad faith, it should be considered in determining the "fairness" of ordering defendant to contribute to plaintiff's counsel fees. The judge did not discount plaintiff's struggle with her addiction and commended her for successful treatment.

The judge found, however, that plaintiff's actions had an impact upon defendant's financial status. The judge pointed out plaintiff's continued failure to pay her share of the children's college costs and plaintiff's "dissipation" of the SSD benefits received for the children.

On appeal, plaintiff argues the judge erred by finding that she did not act in bad faith, but then seemingly contradicted herself by purportedly penalizing her for acting in bad faith for failing to contribute to the college expenses and spending the SSD benefits intended for the children. However, as stated previously, the judge explained that she considered plaintiff's substance abuse

16

only to the extent that it affected defendant's financial status. We therefore reject plaintiff's contention that the judge found that she acted in bad faith in the litigation.

Plaintiff also contends the judge erred by stating that she had not paid her share of the children's college costs, as previously ordered by the court. She contends there was nothing in the record to support the judge's finding.

We note, however, that in her certification dated October 8, 2015, plaintiff stated the parties' son was attending college, and defendant had presented her with a bill for her share of the college expenses. She asserted that she believed defendant was in a superior position to pay all of the college expenses. Plaintiff did not state that she had paid her share of the expenses.

Moreover, during cross-examination at the May 4, 2016 hearing, plaintiff was asked about the payment of college expanse for the parties' son. She stated she "would like to contribute [her] percentage." Plaintiff said she wanted to be involved in her son's college education "and that would be financially, as well." She said she could not afford to pay what defendant was seeking, but she wanted "to contribute [her] portion" of these expenses. She never testified that she had, in fact, paid a share of the college expenses.

Thus, the record supports the judge's finding that plaintiff had not contributed to the college expenses for the parties' children. Furthermore, the judge did not err by considering plaintiff's failure to pay her share of these expenses when reviewing her application for an award of counsel fees.

We conclude there is sufficient credible evidence in the record to support the judge's findings regarding the factors in Rule 5:3-5(c). The judge did not abuse her discretion by denying plaintiff's application for the award of attorney's fees.

In view of our decision, we need not consider plaintiff's contention that if the matter is remanded, it should be assigned to a different judge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5071-18T3