**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1984-22

PO DONG,

 Plaintiff-Respondent,

v.

WEI LI,

 Defendant-Appellant.

_____

Argued January 30, 2024 – Decided February 23, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0382-19.

Bettina E. Munson argued the cause for appellant (Lomurro Munson LLC, attorneys; Bettina E. Munson and Christina Vassiliou Harvey, of counsel and on the briefs; Sean M. Wirth, on the briefs).

Richard A. Outhwaite argued the cause for respondent (Weinberger Divorce and Family Law Group, LLC, attorneys; Richard A. Outhwaite, on the brief).

PER CURIAM

Defendant Wei Li appeals from the February 17, 2023 Family Part order, denying reconsideration of a December 16, 2022 order that denied a plenary hearing regarding a modification of her imputed income established in the parties' marital settlement agreement (MSA) and an increase in plaintiff Po Dong's alimony obligation based on changed circumstances. As defendant had established a prima facie showing of changed circumstances, we reverse and remand for a plenary hearing.

I.

The parties were married in November 1999 and share a son, born in May 2007, who is autistic and has special needs. In December 2018, the parties divorced and incorporated into their judgement of divorce their MSA which addressed alimony, child support, and parenting time.

The parties' MSA recognized that given the nature of their son's disability, he may never be emancipated. The parties agreed plaintiff would pay limited duration alimony for nineteen years. At the time of the divorce, alimony was established on plaintiff's annual gross income of $238,000 and defendant's part-time income of $1,400 per year. The parties recognized defendant's "language skills, education, and training" required advancement and agreed to calculate alimony with a two-year "step-down arrangement" to provide time for defendant

A-1984-22

to gain employment. Defendant was imputed an annual income of $10,000 for the first two years and $40,000 thereafter.

The MSA included a lifestyle provision which stated:

> The parties have been advised by their attorneys of the case of Crews v. Crews, 164 N.J. 11 (2000)[,] in every respect including the parties' respective right, after the divorce, to enjoy a lifestyle reasonably comparable to that enjoyed during the marriage. It is specifically agreed between [h]usband and [w]ife that after considering the equitable distribution of assets and the support provisions contained herein, as well as their respective abilities and obligations to provide for their own support, that neither party can maintain a lifestyle reasonably comparable to that enjoyed during the marriage, but nevertheless accept the alimony provisions set forth herein.

The parties did not designate a parent of primary residence as they agreed to a fifty-fifty shared parenting schedule. At the time of the divorce, their son was enrolled in middle school but was released in March of 2019 based on behavioral issues. Three months later, following a period of homeschooling, their son began attending a specialized school from 9:00 a.m. to 2:30 p.m. The specialized school closed in March 2020 due to the COVID-19 pandemic and remained closed until September 2021.

Almost one year after the parties' divorce, plaintiff permanently relocated to California with his new wife for a new employment position. In April 2020,

defendant filed a motion to relocate the parties' child to California. While the matter was pending before the court, the parties consented to a best interests evaluation and attended mediation. The parties eventually resolved parenting time and child support. By way of a consent order, defendant was designated as the parent of primary residence with their son remaining in New Jersey. The agreement reduced plaintiff's parenting time to four weeks in the summer and approximately one week for both winter and spring break. Plaintiff's child support obligation was increased to $2,400 a month.

In 2021, plaintiff's income increased to $480,144.20. His income in 2020 was higher based on a sign-on bonus and moving credit. Defendant had not obtained employment near the imputed income.

In August 2022, defendant moved to: modify her alimony based on the plaintiff's increased income and decreased parenting time; modify her imputed income; permit any modification to be retroactive; require discovery; temporarily increase alimony pending a plenary hearing; create a second litigation fund with plaintiff contributing seventy percent; and for the existing litigation fund to be replenished by plaintiff. Plaintiff opposed and cross-moved for the following relief: to deny defendant's motion; for reimbursement of mediation fees; to enforce the defendant's imputed income in the MSA; to order

4

defendant accompany their child during travel to California and pay a portion of their travel expenses; and for attorney's fees and cost.

The judge's December 16 order denied defendant's motion entirely and granted in part plaintiff's motion, enforcing defendant's imputed income pursuant to the MSA. In her written statement of reasons, the judge noted defendant argued that "the change in parenting responsibilities ha[d] impacted her ability to hold a better job" and that "there [wa]s no way . . . she c[ould] get a job earning $40,000 per year because of her time commitments to [their son]." The judge stated:

> The [c]ourt has reviewed the certifications of the parties, the numerous exhibits, and the partie[s' c]ase [i]nformation [s]tatements [(CIS)]and does not find that defendant has met her burden regarding modifying the alimony. She asks the court to consider husband's newly increased income since he relocated to California with his new wife and family and argues that the court should impute no income to her, increase the alimony to cover her expenses, and take away the tax shifting which provided plaintiff with the ability to deduct the alimony from his gross income.

On appeal, defendant raises a single argument, arguing the judge erred in denying her request for a plenary hearing based upon her demonstration of a prima facie change in circumstances. We agree.

A-1984-22

II.

"We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Our scope of review of Family Part orders is limited. Cesare, 154 N.J. at 411. A judge's findings "are binding on appeal so long as their determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare, 154 N.J. at 411-12). Generally, a Family Part judge's findings regarding the modification of alimony "should not be vacated unless the court clearly abused its discretion, failed to consider all of the controlling legal principles, made mistaken findings, or reached a conclusion that could not reasonably have been reached on sufficient credible evidence present in the record." J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). However, while "a family court's factual findings are entitled to considerable deference, we do not pay special deference to its interpretation of the law." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016) (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

We also review orders denying reconsideration for abuse of discretion. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016). A court

6

abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with "a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage."'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). "Parties to a divorce . . . may enter into voluntary agreements governing the amount, terms and duration of alimony, and such agreements are subject to judicial supervision and enforcement." Ibid. Matrimonial agreements are "'entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just," because they are "essentially consensual and voluntary in character." Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)).

An alimony order establishes only the present support obligation and is "always subject to review and modification on a showing of 'changed circumstances.'" Cardali v. Cardali, 255 N.J. 85, 93 (2023) (quoting Lepis v.

7

Lepis, 83 N.J. 139, 146 (1980)); Crews, 164 N.J. at 28. Pursuant to N.J.S.A. 2A:34-23, an alimony order "may be revised and altered by the court from time to time as circumstances may require." Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). When a party moves for a reduction in alimony, the judge undertakes a two-step inquiry. Crews, 164 N.J at 28. The judge must first determine whether the moving party has made a prima facie showing of changed circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). A "prima facie showing is distinct from the final proofs that are the basis for an adjudication on the merits; it is simply a threshold showing." Cardali, 255 N.J. at 108. "Changed circumstances such as child maturation, increases in need, employment, or child emancipation may result in a modification of support." Miller v. Miller, 160 N.J. 408, 420 (1999). Importantly, the moving party must demonstrate a change in circumstances from those existing when the prior support award was fixed. Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990); see also Donnelly v. Donnelly, 405 N.J. Super. 117, 127-29 (App. Div. 2009).

The second step requires that "the party seeking modification of an alimony award 'must demonstrate that changed circumstances have substantially impaired the [movant's] ability to support himself or herself.'" Crews, 164 N.J.

8

at 28 (quoting Lepis, 83 N.J. at 157). "[T]he ability to support oneself must be understood to mean the ability to maintain a standard of living reasonably comparable to the standard enjoyed during the marriage." Ibid. It is clear that "the marital standard of living is the measure for assessing initial awards of alimony, as well as for reviewing any motion to modify such awards." Id. at 35.

After a party seeking an alimony modification has made a prima facie showing, "a court may order discovery and hold a hearing to determine the supporting spouse's ability to pay." Miller, 160 N.J. at 420. "Although equity demands that spouses be afforded an opportunity to seek modification, the opportunity need not include a hearing when the material facts are not in genuine dispute." Lepis, 83 N.J. at 159. However, when a party has "clearly demonstrate[d] the existence of a genuine issue as to a material fact," a hearing is necessary. Ibid.

### III.

After a review of the record in view of the governing legal principles, we are constrained to reverse. Plaintiff's move to California indisputably resulted in defendant's significantly increased parenting time, which, in addition to her added responsibility to homeschool their son for over eighteen months during the pandemic, demonstrated a prima facie showing of changed circumstances.

9

Specifically, defendant's parenting time with the parties' special needs son increased by over thirty-five percent, and she certified that her increased parenting responsibilities inhibited her employment capacity. The judge also overlooked that after defendant's move, plaintiff gained greater parental responsibility as the only parent in the state where the child resided. Notably, the majority of plaintiff's modified parenting time occurred over four weeks in August. Our Supreme Court elucidated that a parent's reasonable belief "that she could take only employment positions that provided her with scheduling flexibility so as to be responsive to her children's special needs should be fairly considered." Crews, 164 N.J. at 36. The exchange of discovery and a plenary hearing were warranted.

Sufficient credible evidence in the record demonstrates defendant established a prima facie showing of a change in her parenting obligations which, she claims, caused significant time limitations affecting her employability. See Cardali, 255 N.J. at 109 ("[P]rima facie evidence is defined as 'evidence that, if unrebutted, would sustain a judgment in the proponent's favor.'" (quoting Baures v. Lewis, 167 N.J. 91, 118 (2001), overruled on other grounds by Bisbing v. Bisbing, 230 N.J. 309 (2017))). The extent of the effect on defendant's employability caused by the increased parenting time and greater

responsibilities is materially disputed. Interconnectedly, plaintiff's increased income in relation to the parties' marital standard of living is also materially in dispute. Full discovery was warranted on these issues.

We also part ways with the judge's reconsideration findings that plaintiff's substantial reduction in parenting time due to his relocation to California was not a material change and that defendant "had [two] years to improve her condition, during which most of that time [plaintiff] was still in New Jersey and she had not made any effort to do so." Although the December 2018 MSA provided defendant a two-year step-down before her imputed income rose to $40,000, the judge failed to fully consider that during that period, the parties' son was homeschooled for approximately three months after his removal from school due to his increased behavioral issues.

Pursuant to N.J.S.A. 2A:34-23(c), "[a]n award of alimony . . . may be modified based either upon changed circumstances, or upon the nonoccurrence of circumstances that the court found would occur at the time of the award," with the court's required reconsideration of the statutory alimony factors. As defendant established sufficient factual predicates surrounding changed circumstances, the judge was required to consider the alimony factors. We conclude the judge did not accord appropriate consideration to the factors

established in N.J.S.A. 2A:34-23(b) as she did not sufficiently address "(7) [t]he parental responsibilities for the children" or "(8) [t]he time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment." These factors are to be addressed at a plenary hearing.

Further, as defendant correctly argues, the alimony factors do not include consideration of child support. The judge's partial reasoning that "child support increased by approximately $2,000 . . . a month plus an increase in extracurricular contributions," "the child support was already increased," and "the child ha[d] already benefitted from his father's 'increased fortunes'" was erroneous. Case law is clear that child support belongs to the child, and not the custodial parent. Pascale v. Pascale, 140 N.J. 583, 591 (1995). Child support amounts should not have been considered in determining whether defendant had met her burden of showing a change in circumstances.

Lastly, we disagree with the judge's finding that the standard of defendant's lifestyle was not reduced in observing that "[i]t [wa]s sufficient to simply review the CIS, see that the numbers [we]re comparable to what both parties were spending when married, see that [defendant] even ha[d] spending ability to send her mother $4[,]800 per year to support her in China." As our

Supreme Court elucidated in Crews, "the CIS information generally reflects a more current financial picture of the parties. It does not necessarily provide information reflective of the standard of living enjoyed during the marriage." 164 N.J. at 27. Here, the parties' MSA provided "that neither party can maintain a lifestyle reasonably comparable to that enjoyed during the marriage." Therefore, the judge's alimony and lifestyle reasoning, which was based on a review of defendant's CIS at the time of the divorce compared to her current CIS, to deny a plenary hearing was misplaced.

To the extent that we have not addressed the parties' remaining arguments, it is because our disposition makes it unnecessary, or they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded for a plenary hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1984-22